AFRICAN METHODIST EPISCOPAL ZION CHURCH, AND THE CHURCH EXTENSION OF THE AFRICAN METHODIST EPISCOPAL ZION CHURCH v. UNION CHAPEL A.M.E. ZION CHURCH, JAMES M. GRIFFIN, MARGARET P. SMITH, GLORIA W. CROSS, GEORGE W. SMITH, LEROY SMITH, CECIL DALTON, PAUL GRIFFIN, REGGIE HARGROVE, AND CHARLIE GRIFFIN, INDIVIDUALLY AND AS TRUSTEES, AND REV. SAMUEL PURYEAR, INDIVIDUALLY AND AS MINISTER

No. 8222SC597

(Filed 18 October 1983)

1. **Rules of Civil Procedure § 59— failure to amend judgment—order of court not consistent with judge's intent**

     Where the proper factors to have considered in the resolution of a dispute between the parties were those concerning the nature of the relationship between the plaintiff general church and the defendant local church rather than whether the evidence was sufficient to establish record title in plaintiff general church, the trial court heard the evidence and found the facts against

plaintiff under a misapprehension of the controlling law, and therefore, the factual findings may be set aside on the theory that the evidence should be considered in its true legal light.

**2. Religious Societies and Corporations § 3.1— right of parent body of hierarchical church to control property of local affiliated church**

Where plaintiff, parent body of a hierarchical church, sought the right to control the property of defendant church, as a local affiliated church, and where defendant church asserted it had never been affiliated with the plaintiff church, the central question to be answered on remand is whether defendant local church was in fact in a hierarchical relationship with the plaintiff parent body with respect to property matters.

APPEAL by plaintiffs from *Washington, Judge.* Order entered 7 April 1982 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 20 April 1983.

On 31 July 1980, plaintiffs, African Methodist Episcopal Zion Church and the Church Extension of the African Methodist Episcopal Zion Church, filed a complaint against defendants, Union Chapel A.M.E. Zion Church, certain named trustees individually and as trustees, and Rev. Samuel Puryear, individually and as minister of defendant Church. Eventually the case was tried without a jury before Judge Washington. The court allowed defendants' motion to dismiss the complaint under Rule 41(b) of the Rules of Civil Procedure at the close of all the evidence. A written judgment was entered on 15 February 1982. Plaintiffs filed a motion under Rule 59 of the Rules of Civil Procedure seeking to set aside the judgment and grant a new trial, or, in the alternative, enter a new judgment. The motion was heard by the court on 1 April 1982. The motion was denied and plaintiffs appeal.

*Burke & Donaldson, by Arthur J. Donaldson, for plaintiff appellants.*

*Smith, Michael & Penry, by Robert B. Smith, Jr. and Phyllis S. Penry, for defendant appellees.*

JOHNSON, Judge.

The central question presented by this appeal concerns the nature of the issues decided by the 15 February 1982 judgment entered upon defendants' Rule 41(b) motion to dismiss the complaint. A summary of the facts and events leading up to entry of

the court's judgment is necessary for an understanding of the issues presented by this appeal.

I

Plaintiff, African Methodist Episcopal Zion Church (hereafter A.M.E. Zion Church), is an unincorporated religious association with an office in Charlotte, North Carolina. The Church Extension of the A.M.E. Zion Church is a North Carolina corporation, incorporated on 17 November 1969, whose purpose is the promotion of the temporal welfare of the A.M.E. Zion Church. The defendant congregation, Union Chapel A.M.E. Zion Church (hereafter Union Chapel), is alleged by plaintiffs to be a class of people who seek to break Union Chapel's affiliation with, and commitment to, the A.M.E. Zion Church. The defendant, Rev. Samuel Puryear, is the minister of Union Chapel. Rev. Puryear was ordained by an A.M.E. Zion Bishop and sent to Union Chapel at a time when the old church building was in existence in late 1973 or early 1974. Rev. Puryear was accepted by the congregation at Union Chapel, and during his tenure a new church building was constructed. The other named defendants are the trustees of Union Chapel A.M.E. Zion Church.

The A.M.E. Zion Church has been in existence since 1796. The rules, regulations and doctrines governing and controlling the operation of the church are found in "The Doctrine and Discipline of the African Methodist Episcopal Zion Church," revised in May, 1976 and hereafter referred to as "the Discipline." The A.M.E. Zion Church is a hierarchical church composed of local pastors, deacons, elders, presiding elders, and bishops, whose duties are specified in the Discipline. Periodic meetings are held, known as the General Conference, Annual Conference, District Conference and Quarterly Conference. The Church has a home mission department, makes grants and loans to local churches and has a publishing house in Charlotte, North Carolina. It operates Livingstone College in Salisbury, North Carolina and conducts Hood Seminary, a part of Livingstone College, to train its pastors. The A.M.E. Zion Church is financed by assessments called "general claims," which are paid by the members of the local churches to the "Connection," meaning the central or general church.

A brief history of the origin of the A.M.E. Zion Church is contained in the Discipline.

The John Street Church was the first Methodist Church erected in [New York City]. There were several colored Members in this Church from its first organization. Between the years 1765 and 1796 the number of colored members largely increased, so much that caste prejudice forbade their taking the sacrament until the white families were all served. This, and the desire for other Church privileges denied them, induced them to organize themselves, which they did in the year 1796. This was the first African Episcopal Church of which we have any account. In the year 1800 they built a church and called it Zion. This Church, unlike the other colored Methodist Churches formed about the same period, was, as regards its temporal economy, separate from the Methodist Episcopal Church, from its first organization . . . As we have shown, the Connection is generally called Zion out of respect to that first Church. But the style and title of the Church, as the founders tell us, is the African Methodist Episcopal Church.

The present controversy arose out of events occurring in 1976 and early 1977. The record discloses that the defendants sought to disaffiliate from the A.M.E. Zion Church, apparently as a result of an increase in assessments levied by the 1976 General Conference. According to the Presiding Elder of the Winston-Salem District of the Western North Carolina Conference of the A.M.E. Zion Church, Richard J. Harris, II, the increase was needed so that the general church could provide insurance for the local ministers. Defendants were also apparently concerned that an A.M.E. Zion Bishop did not attend the dedication of the new Union Chapel Church building because the church could not afford to pay him a $300.00 honorarium.

By a letter dated 18 May 1977, the defendant trustees of Union Chapel notified Elder Harris of their decision to withdraw Union Chapel's membership from the African Methodist Episcopal Zion Church Conference. The letterhead reads:

UNION CHAPEL A.M.E. ZION CHURCH
ROUTE L
LINWOOD, NORTH CAROLINA

The text contains references to the fact that increased financial obligations faced by Union Chapel due to the new Church

building, together with the increased A.M.E. Zion assessments posed an "overload" situation for Union Chapel's membership, and indicated that the Trustee Board proposed the withdrawal. The letter states:

> A business meeting was held in the fellowship hall of our church on March 5, 1977. At that time, a recommendation was made by the Trustee Board and a motion made and carried as stated below:

> That the Union Chapel A.M.E. Zion Church withdraw its membership from the African Methodist Episcopal Zion Church Conference (Western North Carolina Conference). The effective date of the withdrawal to be at the closing of the 1976-77 conference year—August, 1977.

The letter was signed by each of the named defendant trustees under the heading, "The Trustee Board—Union Chapel A.M.E. Zion Church." Elder Harris responded by separate letters to Rev. Puryear and to the Board of Trustees, each dated 20 June 1977, informing them, *inter alia*, that under both civil law and the rules governing church property contained in the Discipline, the membership of Union Chapel could withdraw from the Connection as individuals, but that the church property must remain within the Connection. Since 1977, Union Chapel has not participated in any meetings of the Western North Carolina Conference, nor paid its general assessments.

Two tracts of land are the subject matter of the present controversy. They are described for purposes of this appeal as follows:

First Tract:

> By deed dated 27 January 1873, Hezekiah Lomax and Burgep Cox of Davidson County conveyed to Arab Banks, Cliff Roberts and Perry Hall, trustees for "a Methodist Epeskopal [sic] Church of the County of Davidson" certain real property containing 1.001 acres, which deed was recorded 3 July 1946 in the office of the Register of Deeds for Davidson County in Deed Book 166, page 101.

SECOND TRACT:

By deed dated 6 December 1975, Josephine G. Mobley and husband, Isaiah Mobley conveyed to the defendants as trustees of the "Union Chapel A.M.E. Zion Church, Church-land," 1½ acres of land, which deed was recorded 10 December 1976 in the office of the Register of Deeds for Davidson County in Deed Book 543, page 443.

On 31 March 1977, the trustees of Union Chapel A.M.E. Zion Church executed a deed to Sam H. Puryear and wife, Beverly H. Puryear for .502 acres, a portion of the property described above as the Second Tract. That deed was recorded in Deed Book 548, page 533 in the office of the Register of Deeds, Davidson County. On 2 August 1979, by deed recorded in Deed Book 574, page 165 in the above office, James Griffin, *et al.*, "Trustees of the Union Chapel A.M.E. Zion Church, Churchland," executed a deed to James Griffin, *et al.*, "Trustees of Union Chapel Methodist Church," for that property described in Deed Book 166, page 101 (FIRST TRACT) and that property described in Deed Book 543, page 443 (SECOND TRACT) [.502 acres of which had previously been deeded to the Puryears].

Since at least 1940, the A.M.E. Zion Church Discipline has required that a trust clause be incorporated in all conveyances to the A.M.E Zion Church by which premises are held or acquired for worship or other church activities. However, beginning with the 1968 Discipline at Paragraph 434, Section 2, it is specifically provided that the absence of the "trust clause" in deeds and conveyances previously executed does not relieve a local church from connectional responsibilities.[1] Neither the 1873 deed for the First

---

1. Paragraph 432, Sec. 2 of the 1976 Revised Discipline is essentially identical and it provides:

However, the absence of trust clause stipulated in paragraph 431 and paragraph 432, Section 1, in deeds and conveyances previously executed, shall in no way exclude a local church from, or relieve it of, its African Methodist Episcopal Zion Church Connectional responsibilities. Nor shall it absolve a local congregation or board of trustees of its responsibility to the African Methodist Episcopal Zion Church, provided that the intent and desire of the founders and/or the later congregations and boards of Trustees is shown by any or all of the following indications: (a) the conveyance of the property to the trustees of the local African Methodist Episcopal Zion Church or any of its predecessors; (b) the use of the name, customs, and policy of the African

Tract nor the 1976 deed for the Second Tract contained the trust language required by the 1940 and subsequent Disciplines.

Plaintiffs instituted this action by filing a complaint on 31 July 1980. The complaint alleged, in essence, that A.M.E. Zion Church is a connectional church and its governing rules and regulations are as set forth in its Discipline; that Union Chapel A.M.E. Zion Church is a member of plaintiff general church, in particular is a member of the Western North Carolina Conference, and that, as a member of the A.M.E. Zion Church Connection, Union Chapel is subject to the rules and regulations of the A.M.E. Zion Church Discipline and also subject to those rules promulgated by the General Conference. Further, that Union Chapel has been under A.M.E. Zion Church supervision, direction and control since its establishment and that Union Chapel, its ministers, trustees and members have in the past recognized and adhered to the authority, rulings, teachings and power of the A.M.E. Zion Church Connection, Discipline and District Conference until a division occurred on or about August, 1977, resulting from the decision of Union Chapel's membership to withdraw from the A.M.E. Zion Church Connection.

The complaint alleges further that demand has been made on the Union Chapel Church to meet its connectional obligations, but that such requests have been refused; that Union Chapel's continued use of the church property [First and Second Tracts] is without the consent of the A.M.E. Zion Church; and that "the defendants are now in the wrongful and unlawful possession of the above named premises and that said defendants are continuing to use the above described premises for purposes other than which they were originally conveyed." Plaintiffs alleged that they "have no adequate remedy at law," and prayed for the following relief:

1. That pursuant to N.C.G.S. 1A-1, Rule 56 and N.C.G.S. 1-485, et seq. the Court issued a permanent injunction restraining the defendants from continuing to unlawfully use

Methodist Episcopal Zion Church in such a way as to be thus known to the community as a part of this denomination; (c) the acceptance of the pastorate of ministers appointed by a bishop of the African Methodist Episcopal Zion Church, or employed by the presiding elder of the district in which it is located.

the premises described in paragraph VI, for their own purposes except with the express consent of the A.M.E. Zion Church or one of its subdivisions with the power to give such consent.

2. That the A.M.E. Zion Church be adjudged the owner in fee of the property described in paragraph VI. [First and Second Tracts]

3. That the defendants be ordered to give an accounting of all the moneys collected while they were in wrongful possession of the A.M.E Zion Church property, and that upon such accounting being given, the plaintiffs have a judgment against the defendants in the amount of said accounting.

4. That plaintiffs have and recover of the said defendants the amount of $20,000 individually for the intentional wrongful use of the said property.

In response, defendants moved to dismiss the complaint pursuant to Rule 12(b) of the Rules of Civil Procedure and on the grounds of lack of capacity to sue. With leave, plaintiffs amended their complaint regarding capacity and set out in more detail the allegations against the defendants. Specifically, the amended complaint alleges that Rev. Puryear was assigned by the A.M.E. Zion Church to be the minister at Union Chapel and that since August, 1977, he and the defendant trustees have seized the church property and converted it to their own personal use, contrary to the wishes and demands of plaintiffs. The amended complaint alleges further that plaintiffs are the fee simple owners of the disputed tracts; that defendants claim an estate or interest in the land adverse to the plaintiffs, which constitutes a cloud upon plaintiffs' title; that defendants are continuing to use the premises for purposes other than which they were originally conveyed; and that defendants' claim to the property is invalid because the A.M.E. Zion Church is "connectional in nature and all property held in the name of its local and affiliated churches or the trustees thereof is held in trust for the plaintiff, the African Methodist Episcopal Zion Church." The amended complaint also alleges that plaintiffs will be irreparably harmed unless defendants are ordered to surrender possession of the church premises and enjoined from making unauthorized dispositions of church funds until an adjudication of the matter on the merits may be had.

The amended prayer for relief, in pertinent part, is as follows:

1. That this Complaint be treated as an affidavit by the Court and as an Order directed to the defendants ordering them to show cause why a Preliminary Injunction should not be issued enjoining the defendants . . . from refusing to surrender possession of the premises at Union Chapel A.M.E. Zion Church to the plaintiffs, from interfering with the plaintiffs in the operation of the Church, and from making any expenditures of church funds until a hearing on the merits can be held in this cause;

2. That this Court declare the cloud created by the adverse claim of the defendants removed from said title and that the plaintiff, the African Methodist Episcopal Zion Church, be declared the owner in fee simple of said property free from the claim of defendants, and that defendants be required to vacate said property immediately;

On 29 October 1980, the defendants answered, denying the material allegations of the complaint, and alleging as a defense that Rev. Puryear is the minister of the "Union Chapel Methodist Church," and that the defendants individually and as trustees of the "Union Chapel Methodist Church" do claim an interest in the land which is adverse to plaintiffs. Defendants prayed that the complaint be dismissed pursuant to Rule 12(b)(6) and Rule 9(a) of the Rules of Civil Procedure, and further, that the court declare that the individual defendants as trustees hold title to the property for the use and benefit of the members of the "Union Chapel Methodist Church" and, *inter alia*, that said Church be declared owner in fee simple of the church premises. The defendants also prayed that the complaint not be treated as an affidavit on which to base the entry of a show cause order "because the same is not verified; and that an order to show cause not be issued until proper motion and affidavits are presented."

The record does not contain any further motions or affidavits requesting that an order to show cause be issued against defendants regarding the preliminary injunctive relief prayed for by plaintiffs in their amended complaint. On 7 July 1981, the defendants moved for summary judgment with a supporting affidavit of Rev. Puryear pursuant to Rule 56 of the Rules of Civil Procedure.

The defendants' motion states that "this is an action to determine title to the real property on which the church building is located." In brief, the motion alleges that the 1873 deed does not contain the trust language required by the A.M.E. Zion Church Discipline and that the property has never been conveyed to either of the plaintiffs. In the accompanying affidavit, Rev. Puryear alleged that the organization now known as "Union Chapel Methodist Church" has been in continued existence since prior to 7 January 1873; that its trustees have never deeded the property to plaintiffs; and that at no time has defendant local church entered into an agreement with plaintiffs to hold in trust any of the real property deeded to them on 7 January 1873.

Plaintiffs responded with an affidavit by Rev. Richard Harris, II, Presiding Elder of the Winston-Salem District of the A.M.E. Zion Church. The affidavit contains allegations similar to those stated in plaintiffs' complaint—that Union Chapel A.M.E. Zion Church and the named defendants have been affiliated with plaintiffs since the early 1900's and have in the past recognized and adhered to the authority and rules of the A.M.E. Zion Church. Elder Harris pointed to the warranty deed dated 2 August 1979, which states that the conveyance was from the named defendants as "Trustees of the Union Chapel A.M.E. Zion Church, Churchland, acting pursuant to the unanimous consent of the members in full connection of said church: to the Trustees of Union Chapel Methodist Church," as evidence of defendants' self-acknowledged affiliation with plaintiffs. Elder Harris also alleged that the defendants' purported withdrawal from the A.M.E. Zion Connection, as evidenced by the 18 May 1977 letter from the defendant trustees to Elder Harris, was not done in accordance with the church Discipline, and is therefore of no effect.

On 9 September 1981, defendants' motion for summary judgment was denied. Plaintiffs, on 9 October 1981, filed a motion for summary judgment, incorporating by reference Elder Harris' earlier affidavit. Plaintiffs' motion alleges that "this is an action to recover land as church property wrongfully withheld by defendants." The motion contains the following pertinent, abbreviated allegations:

1. The real property on which the church building is located was deeded in 1873 to certain named trustees for a "Methodist Episcopal" Church, said deed was recorded in 1946.

2. That the A.M.E. Zion Church is the black church which grew from the Methodist Episcopal Church to which the property was originally deeded.

3. That the property was deeded to be used for Methodist Episcopal religious services for black people, which church would be a connectional church. G.S. 61-3 provides that property shall forever be used for the purposes for which it was granted and shall be vested in the said denomination.

4. That defendants seek to alter the use for which the property was conveyed, and seek to use the same as a congregational church.

5. That various actions demonstrate that Union Chapel A.M.E. Zion Church is affiliated with the A.M.E. Zion Church Connection.

6. That the Discipline provides that local church property enures to the benefit of the A.M.E Zion Church Connection.

Plaintiff's motion for summary judgment was denied on 12 October 1981. An order on the final pretrial conference was filed that same day. In the order, plaintiffs contended that the contested factual issues to be tried were as follows:

1. Whether the defendant church is congregational or connectional in nature?

2. Who constitutes the governing body of Union Chapel A.M.E. Zion Church?

3. Who has that governing body determined to be entitled to the property?

Defendants, to the contrary, contended that the contested issues were as follows:

1. Is the title to the real property described in the amended complaint vested in the plaintiffs?

2. Is the property described in the complaint vested in the defendants as Trustees for the Union Chapel Methodist Church?

The parties stipulated that all issues were to be tried by the court. Certain facts were also stipulated to regarding the conveyances of the disputed property, including a stipulation that Union Chapel had borrowed funds to construct a church on the property described in Deed Book 166, Page 101 (First Tract) and that no A.M.E. Zion Church or Church Extension funds were used for its construction. The other stipulation relevant to this fact states:

> On March 31, 1977, the trustees of the Union Chapel A.M.E. Zion Church executed to P. V. Critcher, Trustee, a Deed of Trust in favor of Mutual Savings & Loan Association, in face amount of Twenty-seven Thousand ($27,000.00) Dollars . . .

The record also contains the parties' answers to interrogatories and requests for admissions.

The action was heard before Judge Washington sitting without a jury. Plaintiffs presented considerable testimonial and documentary evidence regarding the structure of the A.M.E. Zion Church, its history in North Carolina, and the nature of defendant Union Chapel's relation to the general church. Various persons gave uncontradicted testimony that they were members of the Union Chapel A.M.E. Zion Church and that, to the extent of their personal knowledge, Union Chapel was always known as "Union Chapel A.M.E. Zion Church" and was a part of the general A.M.E. Zion Church. Some of the witnesses were questioned about the cornerstone on the original Union Chapel Church building, and recalled that on the cornerstone was written "Union Chapel A.M.E. Zion Church." Elder Harris recalled that the founding date on the cornerstone was 1906 or the later part of the 1800's. Taken together, nearly all the testimony tended to show the connectional nature of the A.M.E. Zion Church; that Union Chapel had long paid the regular annual assessments and dues of the A.M.E. Zion Church Conference; had participated in quarterly, annual and four year conferences of the general church; had accepted pastoral appointments made by the general church and had adhered to its rules, regulations, customs and policies, and utilized the A.M.E. Zion Church Discipline, order of worship, and hymnals in conducting church services. In addition, Bishop Smith testified that he ordained the defendant Rev. Sam Puryear as an A.M.E. Zion minister and appointed him to Union Chapel

A.M.E. Zion Church. Furthermore, Union Chapel had long used the name "Union Chapel A.M.E. Zion Church."

Plaintiffs' documentary evidence supported the testimony presented concerning Union Chapel's participation in the A.M.E. Zion Connection. In addition, repeated evidence of the defendants' having referred to themselves as "Union Chapel A.M.E. Zion Church" and "Trustees for Union Chapel A.M.E. Zion Church" was introduced in the form of defendants' "withdrawal" letter of 18 May 1977, and the conveyances and deeds of trust the defendant trustees executed under the title, "Trustees of the Union Chapel A.M.E. Zion Church." In addition, they accepted from Josephine Mobley and Isaiah Mobley, as "Trustees of the Union Chapel A.M.E. Zion Church," the conveyance of the Second Tract of property.

Furthermore, plaintiffs introduced evidence tending to show that the attempted conveyances out by the defendants, both by deed and mortgage, did not comply with any of the Discipline requirements. The 1976 Discipline at Paragraph 435, Section 1 requires written consent of the Bishop of the District or the Annual Conference to sell or otherwise dispose of any church property. Such consent was not obtained prior to the purported sales and mortgage of either tract.

With regard to the identity of the grantee church organization named in the 1873 deed to the First Tract, plaintiff's evidence was less complete. The description of the church organization is only that of *a* Methodist Episcopal Church of Davidson County. Plaintiffs' evidence, both documentary and testimonial, tended to show that the deed description could apply to at least three organizations: (1) either a white or black Methodist Episcopal Church, out of which the plaintiff A.M.E. Zion Church grew; (2) a black A.M.E. Zion Church, of which plaintiffs are successors-in-interest; and (3) a black Methodist Episcopal Church which was unaffiliated with the A.M.E. Zion Church. No evidence was presented as to the identity or race of the three trustees named in the 1873 deed. No evidence was presented as to the identity of the church organization occupying the First Tract premises from 1873 to about 1916. However, extensive uncontradicted evidence was presented to show that the only church that occupied the property was an A.M.E. Zion Church called Union Chapel from about 1916 to present.

Furthermore, ample evidence was presented to show that plaintiff A.M.E. Zion Church is *a* Methodist Episcopal Church. Plaintiffs' witness William Milton White, who was qualified as an expert witness on Methodism and the A.M.E. Zion Church, testified that the A.M.E. Zion Church had existed in the western areas of North Carolina since the post-civil war period of reconstruction, was in existence in the Davidson County area in 1873, and has been continually in existence there since 1873 to the present. White also testified that "Methodist" is a term describing a form of religious belief, and "Episcopal" describes the hierarchy of the church, its form of government by a Bishop, a general conference and other lawmaking bodies of the general church which control the local churches. None of the evidence that plaintiffs presented would tend to show that from 1916 to August, 1977 Union Chapel was a self-governing church congregation or that it was a Methodist Episcopal Church unaffiliated with the A.M.E. Zion Connection. Although *no* evidence of record was presented as to who was in possession of the 1873 deed at any time relevant to this action, the deed was recorded in 1946, a time when the property was occupied by the "Union Chapel A.M.E. Zion Church."

At the close of plaintiffs' evidence, defendants' moved pursuant to Rule 41(b) of the Rules of Civil Procedure to dismiss on the grounds "that there is not sufficient evidence in the record to justify the claim for relief which is sought in the complaint." The court indicated that it would reserve its ruling. The defendants stated that they would not offer any evidence and renewed the motion to dismiss the complaint. A colloquy between counsel and the court followed, during which the court indicated its concern that the description of the cestui que trust in the 1873 deed did not appear to be sufficiently definite to vest title in plaintiffs. Counsel for the plaintiffs argued to the effect that notwithstanding the gap in the chain of title from the "Methodist Episcopal Church" named in the 1873 deed to the A.M.E. Zion Church, the evidence presented was sufficient to give plaintiffs an ownership interest in both of the disputed properties under the tests established in Paragraph 432, Section 2 of the A.M.E. Zion Church Discipline. The court then stated:

> At the close of all the evidence I'm going to dismiss the claim and the basic reason is that I do not believe that the evi-

dence supports the prayer for relief by the greater weight of the evidence.

The court entered a judgment on 15 February 1982, containing findings of fact and conclusions of law touching, albeit indirectly, on all the issues raised by the pleadings. Findings of Fact Nos. 1 and 8(g) state that, "this is an action to determine title to real property." Without repeating each finding, the findings of fact taken as a whole are to the effect that plaintiffs had not proved that they were successors in interest to the cestui que trust of the 1873 deed, the Methodist Episcopal Church of Davidson County; that the 1873 deed did not contain the trust language required by the Discipline to vest ownership in the A.M.E. Church; and that no other deed conveying property to plaintiff church had been produced. Similarly, the court found that the 1976 deed from the Mobleys for the Second Tract also failed to contain the trust clause. Various other findings of fact were made regarding the issues of record title and constructive or implied trust. However, no direct findings or conclusions were made with regard to the specific issues plaintiffs listed in the pretrial order. Based upon its findings of fact, the court made the following conclusions of law:

1. There was no improper or unlawful conduct as to the individual defendants and as to those defendants sued in their individual capacity, this action should be dismissed.

2. There was no evidence presented that a Methodist Episcopal Church is, nor was ever one and the same as the African Methodist Episcopal Zion Church, but rather was a separate religious organization and is a separate legal entity.

3. The language contained in the Discipline which attempts to impose a trust upon the property based upon usage and practice of the local church is not sufficient to impose such a trust.

4. No trust in favor of the African Methodist Episcopal Zion Church in America was created as concerns the property recorded in Deed Book 166, Page 101, and on which the church building is located nor on the property conveyed in Deed Book 543, Page 443, which is vacant land.

5. *This is an action to determine legal title to real property* and such question of laws must be decided in conformity with the laws of the State of North Carolina and the plaintiffs have not presented evidence sufficient to sustain the plaintiffs' allegations that they are fee simple owners of the two tracts or that a trust was specifically created, or that a constructive or implied trust should be imposed.

BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, it is hereby ORDERED, ADJUDGED AND DECREED that the plaintiffs' complaint be dismissed and that the cost of this action be taxed against the plaintiffs. (Emphasis added.)

On 23 February 1982, plaintiffs filed a motion pursuant to Rule 59 of the Rules of Civil Procedure for a new trial or the entry of a new judgment on all of the issues on the grounds, *inter alia,* that the order is contrary to law. A colloquy was held between counsel and the court at the hearing on plaintiffs' Rule 59 motion. Plaintiffs' counsel pointed out that the complaint and pretrial order indicated that, from the plaintiffs' perspective, this was *not* primarily an action to try title. Rather, they had primarily sought an injunction to prohibit interference by the defendant Trustees and Reverend in the conduct of Union Chapel as a part of the A.M.E. Zion Church and a declaration of the plaintiffs' right to control the church property. The court then stated:

I have not treated it as a title case, and frankly, I can understand why if it was a title case then someone—, there has to be a judgment saying who had title, whose title it was in. *The judgment does not say to whom this property belongs; all it does is dismiss the plaintiff's complaint* . . .

COURT: Let me ask you this—*how can the Court consider relief unless it has the title question decided.*

MR. DONALDSON: I understand but the defendants brought it up . . .

COURT: Plaintiffs allege they are the owners of the property, that it's the owner of the property.

MR. DONALDSON: That it has the right to the possession of the property, that's right.

COURT: You are saying that the defendant in such case does not have the right to raise *the question as to title, which is required before the plaintiff could obtain injunctive relief* . . .

\*     \*     \*

COURT: . . . *I felt that an integral part of the Court's decision to grant injunctive relief had to be a determination—that plaintiff had sufficient evidence of title in the plaintiff* to obtain injunctive relief. When I say I dismissed it, I dismissed it on the basis I didn't feel that I had enough evidence to say plaintiff or defendant in this case had title to the property. *Now, whether there would be any bar—I don't think there would—to a later action to have trust or constructive trust or implied trust,* something of that nature; whether there could be evidence to establish prescriptive title—*I didn't feel I could rule on that; I didn't feel I could close the door on either party. I frankly anticipated there would have to be further litigation to resolve the question.* (Emphasis added.)

The court inquired of counsel if there was anything in the "judgment" which would preclude or bar plaintiffs from again proceeding.

COURT: My feeling was this was not a case I ought to enter a simple order dismissing the case—maybe I'm wrong; but I felt I ought to have something in that to indicate what some of the evidence was that was presented to the Court, and I had a great deal of difficulty with it, I don't mind admitting that; they submitted to me a draft; I went over it and perhaps the pressure of time in that I was late getting that done. *I made minor revisions but basically signed what they [defendants] submitted. You tell me—do you see anything in this quote "judgment", or what the term is—an order, which precludes or bars the plaintiff from again proceeding?*

MR. DONALDSON: Yes.

COURT: What?

MR. DONALDSON: You say it was an action to try title to land and you dismissed the action; that is your first thing; that puts us out as far as title—you say it's an action to try title to land—

Counsel for plaintiffs then requested that the Court amend the judgment under Rule 41(b) to an involuntary dismissal without prejudice, consistent with the court's intention that further litigation on the merits be had. The trial judge again repeated that "I did not feel I had evidence before me to make a decision of this matter or the merits as to who had record title to the property." The court then inquired whether a sixth conclusion to the effect that "this Court does not consider the evidence sufficient nor the judgment sufficiently definite and certain to constitute or present judicial estoppel of either parties later assertion of title upon proper pleadings . . ." would solve the problem. Further exchanges occurred between counsel and the court. Ultimately, the court noted that plaintiffs' Rule 59 motion was not a motion to modify or amend the judgment and the court refused to amend the judgment to state that the dismissal was "without prejudice" or to include the court's proposed "sixth" conclusion of law. The court also denied plaintiffs' motion for a new judgment or a new trial.

## II

[1]  From the foregoing facts, one conclusion is certain—the judgment entered in this case must be vacated. Despite the lack of (1) a proper motion for an order to show cause why a preliminary injunction should not be entered; (2) any further mention of injunctive relief in the pretrial order; and (3) any findings of fact or conclusions of law relating to the standards for obtaining injunctive relief in the judgment itself, it is clear that the trial judge, by reading the prayer for relief in plaintiffs' original and amended complaint, was under the impression that the *only* issue to be decided was whether plaintiffs had presented sufficient evidence to entitle them to injunctive relief, and, more importantly, that proof of record title in plaintiffs was the *exclusive* basis upon which plaintiffs would be entitled to such relief. Although proof of record title in plaintiffs would indeed be *a* valid basis for injunctive relief, the court was clearly in error as to the nature of the proceeding and the issues before it at the time of the trial itself. In addition, the judgment entered does not specify whether the injunctive relief to which plaintiffs were not entitled was the *permanent injunction* requested in the original complaint, or the *preliminary injunction* requested in the amended complaint. However, the court's remarks make it likely that the court

thought that it was ruling on the request for a preliminary injunction, with trial on the merits to follow. Furthermore, the record of the colloquy on the Rule 59 motion indicates that the court was apparently unaware both of the effect the judgment of involuntary dismissal *with prejudice* at the close of all the evidence would have with regard to future litigation of the issues covered therein, and of the fact that entry of the requested dismissal *without prejudice* would have had precisely the effect the court sought through its proposed "sixth" conclusion of law.

Rule 41(b) states, in pertinent part, that at the close of the plaintiff's evidence the defendant may move "for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Under the rule, the judge is not required to rule on the motion at the close of the plaintiff's evidence and may decline to render any judgment until the close of all the evidence. Rule 41(b) does not specifically provide for involuntary dismissal at the close of all the evidence. However, where such a motion is made and ruled upon and the court has made findings as required by G.S. 1A-1, Rule 52, the judgment entered will be treated as a judgment on the merits. *See Land Co., Inc. v. Wood*, 40 N.C. App. 133, 252 S.E. 2d 546 (1979); *Reid v. Midgett*, 25 N.C. App. 456, 213 S.E. 2d 379 (1975). In ruling on a motion to dismiss under Rule 41(b), the court must pass upon whether the evidence is sufficient as a matter of law to permit a recovery; and if so, must pass upon the weight and credibility of the evidence upon which plaintiff must rely in order to recover. *Knitting, Inc. v. Yarn Co.*, 11 N.C. App. 162, 180 S.E. 2d 611 (1971). If the motion to dismiss is allowed, the trial judge must determine the facts and render judgment against the plaintiff. Rule 41(b) provides that unless the court in its order for dismissal otherwise specifies, [through the language "without prejudice"], dismissal under that section operates as an adjudication upon the merits.

In this case, the judgment appears to find the facts adversely to plaintiffs and would in fact operate to preclude relitigation of the issues it purports to adjudicate, including the issues of title and express, implied, or constructive trust. It would operate, in effect, as a complete adjudication upon the merits. The record plainly discloses that this is precisely the opposite result from that intended by the trial judge when he indicated that the evidence was *merely insufficient to establish record title in plain-*

*tiffs and therefore insufficient to entitle them to the injunctive relief originally requested.* While an appellate court will not ordinarily look behind a judgment to divine the "intent" of the trial court, the record in this case unmistakably discloses the fact that the judgment of involuntary dismissal with prejudice did not express the intention of the court. It is clear that despite the court's refusal to "amend" the judgment pursuant to plaintiffs' Rule 59 motion, the court did not intend that the complaint be dismissed with prejudice so as to preclude future litigation "on the merits" of plaintiffs' claim.

Plaintiffs have assigned as error (1) various findings of fact in the judgment as unsupported by the evidence, and contrary to the evidence; (2) all of the conclusions of law, with the exception of Conclusion No. 1; (3) entry of the judgment as inappropriately granted and as being against the greater weight of the evidence; and (4) the denial of the Rule 59 motion on the grounds that the judgment was contrary to the court's intent and as being against the greater weight of the evidence. However, these contentions do not adequately address the fundamental error in the case.

The trial court was apparently entirely unaware of the underlying nature of the claim being adjudicated and of the relevant body of law controlling disposition of the issues plaintiffs listed in the pretrial order. It was the plaintiffs' contention at trial, and on appeal, that the underlying legal question before the court is whether Union Chapel A.M.E. Zion Church is a connectional or a congregational church. Plaintiffs contend that their evidence established that the A.M.E. Zion Church is a connectional church, whose internal church government is hierarchical. Plaintiffs also contend that Union Chapel was regarded in the community and by its own congregation as being an A.M.E. Zion Church. They point to A.M.E. Zion Church records listing Union Chapel as a member of the Winston-Salem District of the Western North Carolina Conference, to the acceptance of an A.M.E. Zion minister, Rev. Puryear, by the Union Chapel congregation, and to the acts of the defendant trustees in accepting, conveying and mortgaging church property as "Trustees of the Union Chapel A.M.E. Zion Church" in support of their contention that Union Chapel is and has always been affiliated with the A.M.E. Zion Church Connection. Therefore, its ministers, trustees, congregation and property are governed by the general church. Further-

more, plaintiffs contend that the letter of 18 May 1977, by which the defendant trustees attempted to "*withdraw* Union Chapel's *membership* from the African Methodist Episcopal Zion Church Conference (Western North Carolina Conference)," is indisputable evidence that defendants considered themselves an A.M.E. Zion Church. Thus, plaintiffs contend, Union Chapel is a local A.M.E. Zion Church, subject to the authority of the general A.M.E. Zion Church and pursuant to the policies and Discipline of the general church, and in particular Paragraph 432, Sec. 2 of the 1976 Revised Discipline, the continued usage of the First Tract from at least 1916 to August, 1977 by a local A.M.E. Zion Church was sufficient to vest title to the property in plaintiffs as cestui que trust, or, at the very least, to give them a proprietary interest in the possession, use and control of that property. As to the Second Tract, plaintiffs contend that the 1976 deed itself creates an express trust for the benefit of the A.M.E. Zion Church, because the property was conveyed to the defendant trustees as "Trustees" of "Union Chapel, *A.M.E. Zion Church*," notwithstanding the lack of the specific trust clause.

It is evident that under the plaintiffs' theory of the case, the lack of conclusive evidence as to whether plaintiff A.M.E. Zion Church is a successor to *the* Methodist Episcopal Church named in the 1873 deed, and their failure to establish an unbroken chain of record title is not fatal to their claim of a proprietary interest in the church property, for even if it were to be established that Union Chapel was the successor to the named grantee, as a member of the A.M.E. Zion Church Connection, all property theretofore held by the local church would enure to the benefit, and be subject to the control of, the plaintiff general church. The key issue then becomes whether Union Chapel is a member of the A.M.E. Zion Church Connection.

We agree with the plaintiffs that the proper factors to consider in resolution of the dispute between the parties are those concerning the nature of the relationship between the plaintiff general church and the defendant local church. The trial court clearly heard the evidence and found the facts against plaintiffs under a misapprehension of the controlling law. Therefore, the factual findings may be set aside on the theory that the evidence should be considered in its true legal light. *Helms v. Rea*, 282 N.C. 610, 194 S.E. 2d 1 (1973); *McGill v. Lumberton*, 215 N.C. 752,

3 S.E. 2d 324 (1939). Although this cause must be remanded to the Superior Court for a new trial, we will endeavor to clarify the issues raised by this case and the law governing their resolution.

### III

[2] The central issue plaintiffs sought to have adjudicated was not record title, but rather, whether the parent body of a hierarchical church has the right to control the property of a local affiliated church, and whether the rules and decisions of the parent body on questions of church property will be enforced by the civil courts of our state. It is well established that the civil courts have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies for there is a constitutional guarantee of freedom of religious profession and worship, as well as an equally firmly established separation of church and state. N.C. Const. Art. 1, § 13; U.S. Const. amend. I; *Reid v. Johnston*, 241 N.C. 201, 85 S.E. 2d 114 (1954). However, the courts do have jurisdiction as to civil, contract and property rights which are involved in, or arise from, a church controversy. *Id.*

In *Conference v. Allen*, 156 N.C. 524, 526, 72 S.E. 617, 618 (1911), the court explained the difference between the structures of a hierarchical or connectional church, and a congregational church.

In *SIMMONS v. ALLISON*, 118 N.C. [763] 770, [24 S.E. 716 (1896)], we had occasion to call attention to the distinction between those churches whose organization is connectional such as the Protestant Episcopal, the various Methodist churches, the Presbyterian, the Roman Catholic, and others which are governed by large bodies, such as dioceses, conferences, and synods, and the like, in which the individual congregations bear the same relation to the governing body as counties bear to the State, and, on the other hand, the congregational system which is in use among the Baptists, the Congregational, and the Christian and other denominations. In these latter, the individual congregation is each an independent republic, governed by the majority of its members and subject to control or supervision by no higher authority. . . . The churches of the congregational system often combine into associations, conferences, and general conventions. But, unlike such organizations under the connectional system,

these bodies under the congregational system are purely voluntary associations for the purpose of joining their efforts for missions and similar work, but having no supervision, control, or governmental authority of any kind whatsoever over the individual congregations, which are absolutely independent of each other.

*Simmons v. Allison, supra,* itself involved a dispute between two contending boards of trustees of a local A.M.E. Zion Church known as Clinton Chapel. Both parties contended that they represented the identical congregation, and each sought a restraining order against the other to prevent interference in their respective discharge of their official duties. The Supreme Court stated that the controlling issue was whether the local congregation "was an integral part of the large connectional system known as the African Methodist Episcopal Zion Church and subject to its discipline, or had been all along an independent body, recognized and known as such, but voluntarily and temporarily acting with the larger body, with a reserved right to withdraw at any time." 118 N.C. at 770, 24 S.E. at 718. The court stated that the connectional system is recognized by the law, and determined that the controversy between the respective trustees would be resolved according to the Discipline of the A.M.E. Zion Church. In *Simmons* the dispute tangentially involved a latent ambiguity in the 1866 deed for the property on which Clinton Chapel was located, which deeded the land to the trustees of the "African Methodist Church." The court made this pertinent observation about the vagaries of early church deeds:

In probably a majority of the cases church deeds are taken by humble and illiterate men when the church is first beginning, and these deeds are often technically defective (as in the present case) or are never recorded.

118 N.C. at 771, 24 S.E. 719. In *Simmons*, the A.M.E. Zion Church was allowed to prove that no church by the name of "African Methodist" actually existed and that the named trustees were in fact members of the A.M.E. Zion Church.

Thus, our courts have long recognized that the African Methodist Episcopal Zion Church is a connectional church polity, and that civil courts may settle certain types of disputes arising from a church controversy by applying or following the rules of

the A.M.E. Zion Church Discipline. In addition, our Supreme Court has recognized that although the A.M.E. Zion Church is connectional, it is possible that a local church could have retained sufficient independence from the general church so that it reserved its right to withdraw at any time, and, presumably, take along with it whatever property it independently owned prior to, and retained during, its limited affiliation with the general church.

The foregoing principles are consistent with the general rule that the parent body of a hierarchical church has the right to control the property of local affiliated churches, and, as a corollary, that the decision of superior tribunals in hierarchical churches will be enforced in civil courts. Anno., 52 A.L.R. 3d 324, § 2(a) and (b) (1973). The annotation points out at p. 332 that, "[although] the rule has stood for a hundred years that in a hierarchical church organization or denomination the parent or superior ecclesiastical authority — and not the local congregation — has the right to control church property, in 1969 the United States Supreme Court substantially tightened the constitutional requirements for applying this rule."

The case referred to is *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 21 L.Ed. 2d 658, 89 S.Ct. 601 (1969). In that case, the United States Supreme Court in effect reaffirmed and strengthened the right of a parent body in a hierarchically organized church to control the property of local member churches by cutting off a major loophole. Previously, local churches were allowed to withdraw from the parent body without surrendering possession of local church property, ordinarily considered to be held under an implied trust for the parent church, when it was shown that the parent body had departed from fundamental tenants of the faith (the departure-from-doctrine exception). This exception necessarily required courts to interpret religious doctrine. The Supreme Court ruled that civil courts must decide church property disputes without resolving underlying controversies over religious doctrine, and, therefore, must endeavor to use "neutral principles of law" to settle church property disputes, without reference to ecclesiastical law.

Following *Hull Memorial Presbyterian Church*, the Appellate Court of Indiana determined that the "discipline" of a hierarchical

Methodist Church, as it pertains to property of local churches, may be considered a "neutral principle of law" in the resolution of church property disputes between an affiliated local church and its parent body. *United Methodist Church v. St. Louis Crossing*, 150 Ind. App. 574, 276 N.E. 2d 916, 52 A.L.R. 3d 311 (1971). Similarly, in *Green v. Lewis*, 221 Va. 547, 272 S.E. 2d 181 (1980), the Supreme Court of Virginia utilized, *inter alia*, the Discipline of the A.M.E. Zion Church (1972 Revised Edition) to resolve a property dispute between a local A.M.E. Zion Church and the parent body. On facts strikingly similar to those of the case under discussion, the court held as follows:

> We find from the language of the deed involved, the Discipline of the A.M.E. Zion Church, and the relationship which has existed between the central church and the congregation over a long period of years, that the A.M.E. Zion Church does have a proprietary interest in the property of Lee Chapel, and that its interest in the church property cannot be eliminated by the unilateral action of the [local church] congregation.

272 S.E. 2d at 186. *See also* 52 A.L.R. 3d 324, § 23(b) (general rule is that in doctrine and general church organization, African Methodist Episcopal Church does not differ from the Methodist Church, which is clearly hierarchical in polity, and therefore local congregations affiliated with the African Methodist Episcopal Church have been held not to be independent and self-governing with respect to property matters, but subject to the control of superior church authority).

The defendant appellees asserted, in their answers to plaintiffs' interrogatories, that the Union Chapel A.M.E. Zion Church, or the "Union Chapel Methodist Church" as its name appears in the 1979 deed, was never affiliated with the A.M.E. Zion Church. Further, that they never made any reports or accountings to the plaintiffs. The defendants apparently took the position that they had always been an independent body, recognized and known as such, with a reserved right to unilaterally withdraw from the A.M.E. Zion Church. In response to plaintiffs' request to admit, defendants averred that the congregation of the "Union Chapel Methodist Church" has been in continued existence since prior to 27 January 1873.

Therefore, upon remand, the major question to be answered, although now following the *Hull Memorial Presbyterian Church* guidelines, *is whether the defendant local church was in fact in a hierarchical relationship with the plaintiff parent body with respect to property matters.*

We address one further point with regard to the defendants' purported withdrawal from the parent African Methodist Episcopal Zion Church, and their new title as "Union Chapel Methodist Church." It appears that the defendants rested their case largely upon the 1873 deed which describes "a Methodist Epeskopal (sic) Church" in Davidson County. They averred in their pleadings and in the issues set out in the pretrial order that the "Union Chapel Methodist Church" was the owner of the above-mentioned property, and of the Second Tract. Pursuant to G.S. 61-3, all lands given or granted to any church, religious denomination, or congregation for their respective use "shall be and remain forever to the use and occupancy of that church, or denomination, society or congregation" for which the lands were given or granted, and "the estate therein shall be deemed and held to be absolutely vested, as between the parties thereto, in the trustees respectively of such churches, denominations, societies and congregations, for their several use according to the intent expressed in the conveyance." Plaintiffs contend that defendants, as the congregation of Union Chapel *Methodist Church*, would no longer constitute a *Methodist Episcopal Church*, and therefore would be precluded from use and control of the property as against the latter denomination named in the 1873 deed. They cite G.S. 61-3, and *Western North Carolina Conference v. Tally*, 229 N.C. 1, 47 S.E. 2d 467 (1948) (members of congregation who withdraw affiliation from the denomination taking under the deed are not entitled to the control and use of the property as against the grantee denomination). Upon retrial, a determination must be made as to whether "Union Chapel Methodist Church" would be entitled to fee simple ownership of lands deeded to a Methodist Episcopal Church in the 1873 deed and to an A.M.E. Zion Church in the 1976 deed.

In conclusion, we hold that the judgment entered on 15 February 1982 must be vacated because it did not conform to the trial court's stated intention and was entered under a misapprehension as to the nature of the claim being litigated and the

A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church

law applicable to that claim. The cause is remanded to the Superior Court for a trial *de novo*.

Vacated and remanded.

Judges HILL and PHILLIPS concur.