FIRE BAPTIZED HOLINESS CHURCH OF GOD OF THE AMERICAS, INC., PLAINTIFF V. CARL McSWAIN, VIRGINIA McDOWELL, THELMA CHAMBERS, JEFFREY ROSS, AND JACKIE WILLIAMS, TRUSTEES OF FIRE BAPTIZED HOLINESS CHURCH OF GOD OF THE AMERICAS, A/K/A MT. SINAI BAPTIST CHURCH, A/K/A WESTSIDE PRAISE AND WORSHIP CENTER; AND FIRE BAPTIZED HOLINESS CHURCH OF GOD OF THE AMERICAS, MT. SINAI CHURCH, A/K/A MT. SINAI BAPTIST CHURCH, A/K/A WESTSIDE PRAISE AND WORSHIP CENTER, DEFENDANTS

No. COA98-694

(Filed 7 September 1999)

**1. Churches and Religions— connectional relationship— directed verdict—judgment notwithstanding the verdict**

The trial court did not err in denying plaintiff-church denomination's motions for directed verdict and for judgment notwithstanding the verdict on the issue of the fee simple ownership of property in possession of defendants, representing the local church, because although plaintiff was a connectional church organization in relation to defendants prior to defendants' split from plaintiff, defendants were not in a connectional relationship with plaintiff with respect to property matters.

**2. Churches and Religions— denomination's published rules**

Although the language of plaintiff-church denomination's published rules indicate that properly recorded local church property belongs to the denomination, and that a local church seeking to secede from the denomination could not keep such property, the trial court did not err in determining that plaintiff is

FIRE BAPTIZED HOLINESS CHURCH v. McSWAIN

[134 N.C. App. 676 (1999)]

not entitled to the pertinent property in the possession of defendants, representing the local church, because the deeds for the property were not recorded as set forth in the denomination's published rules since: (1) the denomination clearly expressed its disapproval of defendants' plan to acquire the pertinent property; (2) defendants acquired the property, despite the disapproval, by using its own money; and (3) plaintiff did nothing to enforce the published rules at the time of its violation.

**3. Churches and Religions— local church—no prior ownership**

Although defendants, representing the local church, did not own property independently before joining plaintiff-church denomination, the trial court did not err in concluding plaintiff and defendant lacked a connectional relationship with regard to property matters because a seceding church's property rights, the local church in the instant case, are not limited to the property it owned prior to joining a denomination.

**4. Evidence— lay opinion—harmless error**

Even if the trial court erred in admitting, over objection, certain lay opinion testimony regarding the ownership of church property, the error was harmless because it merely corroborated unchallenged testimony from other witnesses without adding any new substantive information.

Appeal by plaintiff from judgment filed 2 February 1998 by Judge Timothy L. Patti in Cleveland County Superior Court. Heard in the Court of Appeals 16 March 1999.

*Smith Helms Mulliss & Moore, L.L.P., by Matthew M. Sawchak and Mary M. Dillon, for plaintiff-appellant.*

*Ali Paksoy, Jr., and Brenda S. McLain, for defendant-appellees.*

LEWIS, Judge.

Plaintiff Fire Baptized Holiness Church of God of the Americas, Inc. ("the denomination") filed a complaint on 20 March 1996 against defendants ("the Shelby church"), seeking a declaration that it was the fee simple owner of property then in possession of the Shelby church. In its answer and counterclaim, the Shelby church asked the trial court to declare the newly formed Westside Praise and Worship Center the fee simple owner of the property.

At the close of all the evidence at trial, the jurors were asked to determine two issues: first, whether the denomination was a connectional church organization; and second, whether the Shelby church, prior to 20 October 1994, was in a connectional relationship with the denomination with respect to property matters. The jury found that the denomination was a connectional church but that the Shelby church was not in a connectional relationship with the denomination with respect to property matters. Judgment was entered for the Shelby church, and the denomination's claims were dismissed with prejudice. The denomination's motion for judgment notwithstanding the verdict was denied, just as its earlier motion for a directed verdict at the close of its evidence had been. From the judgment filed 2 February 1998, the denomination appeals.

To better understand the nature of this case, it is important to first understand some background of the denomination and the Shelby church. The denomination is now over one hundred years old, with a claimed international membership of over 24,000. It is organized into three dioceses, each headed by a bishop. The bishops ordain elders to act as the bishops' representatives to local churches. The denomination assigns pastors to its local churches, and the local churches raise the money to pay these pastors. The Shelby church joined the denomination in the 1930s. The Shelby church raised money to submit at the denomination's annual convention, and the denomination would sometimes give money to the Shelby church for various expenses.

At the center of the present debate is ownership of certain property in Shelby. The facility on Pickney Street that housed the Shelby church beginning in 1937 was condemned in 1970. The Reverend Samuel Ervin, the pastor of the Shelby church in 1970, located another church building on Blanton Street owned by the Davidson Memorial Baptist Church, which agreed to sell this property to the Shelby church and to acquire the condemned property on Pickney Street. In January 1970, Davidson Memorial deeded its property to the "Trustees of the Fire Baptized Holiness Church of God of the Americas, Mt. Sinai Church"; this same name appeared as the grantor on the deed to the Pickney Street property. The Shelby church purchased the Blanton Street property for $25,000 by making a down payment of $5,000 ($2,500 in the form of property traded, and the remaining $2,500 to be raised by the Shelby church) and by covering the balance with a $20,000 mortgage.

FIRE BAPTIZED HOLINESS CHURCH v. McSWAIN

[134 N.C. App. 676 (1999)]

This transaction was undertaken without the approval or permission of the denomination, and in spite of a statement made by a bishop within the denomination that both the Blanton Street property and its accompanying financial obligations were too large and unnecessary for the Shelby church. The denomination nevertheless provided a matching gift of $1,000 toward the down payment, but the Shelby church raised money for the remaining portion of the down payment, the mortgage payments and funding for subsequent renovations.

In a 1983 condemnation action brought against the "Trustees of the Fire Baptized Holiness Church of God of the Americas, Mt. Sinai Church," the City of Shelby paid the Shelby church approximately $28,800 for a parking lot and boarding house on the Blanton Street property. This was done without the permission or approval of the denomination. The Shelby church used these proceeds to buy three new parcels of property and to pay for church renovations, relocation of the fellowship hall, and improvements to the church sanctuary. When the condemnation proceeds did not cover all of the renovation expenses, the Shelby church took out a second mortgage on the church property, without the permission or approval of the denomination, for $25,000 in 1990. The Shelby church neither sought nor received assistance from the denomination in making these renovations.

In October 1994, the Shelby church voted to end its affiliation with the denomination. On 3 January 1996, the trustees of "the Fire Baptized Holiness Church of God of the Americas, Mt. Sinai Church" conveyed the church property to themselves as trustees of the Westside Praise and Worship Center. It was this conveyance that led to the denomination's legal action against the Shelby church, and the Shelby church's success at trial has led to the denomination's appeal to this Court.

[1] The denomination's first argument on appeal is that the trial court erred by denying the denomination's motions for directed verdict and for judgment notwithstanding the verdict. Within this argument the denomination makes three separate contentions: (1) that the jury's finding that the denomination is connectional, with nothing more, justified judgment for the denomination; (2) that the nature of the deed required judgment for the denomination; and (3) that "the verdict that the Shelby church and the [denomination] lacked a connectional relationship on property matters does not support the judgment."

FIRE BAPTIZED HOLINESS CHURCH v. McSWAIN

[134 N.C. App. 676 (1999)]

Although constitutional guarantees and the concept of separation of church and state preclude us from ruling on purely ecclesiastical issues, our courts "do have jurisdiction as to civil, contract and property rights which are involved in, or arise from, a church controversy." *A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C. App. 391, 412, 308 S.E.2d 73, 85 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 649 (1984). In deciding these issues, a central question is whether the church is connectional or congregational. As established in *Simmons v. Allison*, 118 N.C. 763, 24 S.E. 716 (1896) and summarized more recently in *Looney v. Community Bible Holiness Church*, 103 N.C. App. 469, 473, 405 S.E.2d 811, 813 (1991),

> [c]onnectional churches are governed by large bodies and individual congregations bear the same relation to the governing body as counties bear to the State. Congregational churches are independent republics, governed by the majority of its [sic] members and subject to control or supervision by no higher authority. Although congregational churches often associate together for mission purposes, these associations are strictly voluntary and have no governmental authority over the individual congregations.

*Id.* (citations omitted). One early Supreme Court case in this state cited the Protestant Episcopal, Methodist, Presbyterian and Roman Catholic churches as examples of connectional churches and the Baptist, Congregational and Christian churches as congregational. *Conference v. Allen*, 156 N.C. 524, 526, 72 S.E. 617, 618 (1911).

There seems to be little dispute that the denomination and the Shelby church were generally in a connectional relationship prior to the Shelby church's split from the denomination. The question before us is whether this is dispositive of the issue of property ownership, or whether the relationship could be connectional in some respects and congregational in others. In *Looney*, the jury determined that the denomination was a connectional church organization but that the local church was not in a connectional relationship with the denomination with respect to property matters. *Looney*, 103 N.C. App. at 470-71, 405 S.E.2d at 811-12. This Court found no error in the verdict based on "the nature of the property transactions themselves." *Id.* at 474, 405 S.E.2d at 813. The Court noted that under the facts of that case,

> [w]hen the defendant local church affiliated with the plaintiff denominational church, the property was deeded to trustees of,

or for, the local church, not to the denominational church or to trustees of, or for, the denominational church. This pattern was followed in all property transactions during the entire period of affiliation. Thus this evidence created a jury question as to whether *as to church property* the local church intended to establish a connectional relationship with the denominational church.

*Id.* Because *Looney* established that a church could be congregational as to property matters though connectional in other ways, the denomination's argument that the jury's finding of a connectional relationship was enough, standing alone, to justify judgment for the denomination is unconvincing.

Unlike the local church in *Looney*, however, the Shelby church never owned any property before it was associated with the denomination. The first Shelby church property was purchased in 1937, and the deed for this property granted it to the "Trustees of the Fire Baptized Holiness Church of God of the Americas/Mt. Sinai Church and their successors in office." Subsequent deeds involving the local church in 1970, 1984, 1986, and 1996 were similarly titled with the name of the denomination followed by the name of the local church. The denomination claims that General Statute section 61-3 required judgment in its favor.

[2] According to the denomination, section 61-3 "provides that all church property 'shall be and remain forever to the use and occupancy of that church or denomination . . . for which the [church property was] so purchased, given, granted or devised.' " *See* N.C. Gen. Stat. § 61-3 (1989). Such a reading ignores the language of the statute that specifies that this be done "according to the intent expressed in the conveyance, gift, grant or will . . . ." *Id.* The Shelby church argues that the lack of specificity in the deeds, which named both the denomination and the Shelby church as the grantees of church property, fails to demonstrate the intent of the grantor and that this question was properly resolved by the jury. The denomination, citing *A.M.E. Zion*, 64 N.C. App. at 414-15, 308 S.E.2d at 86-87, claims any dispute on this point was not a question of fact for the jury but a question of law to be resolved by the trial court by consulting the church discipline.

The rules of the denomination are enumerated in the *Discipline of the Fire Baptized Holiness Church of God of the Americas* ("the *Discipline*"), published by the denomination. In the 1970

*Discipline*, Section 4 of Article XVI, "Directions Regulating Deeds, Titles, Etc.", read as follows: "Let it be specified in each deed to church property that it shall be for the use and benefit of the ministry and membership of the Fire Baptized Holiness Church of God of the Americas." In the 1994 *Discipline*, Article XVIII bore the same title as Article XVI above, and Section 4 stated, "It shall be specified in each deed to church property that it shall be for the use and benefit of the ministry and membership who are worshipping according to the customs and usages of the Fire Baptized Holiness Church of God of the Americas."

The deeds presented as evidence at trial and included as exhibits on appeal do not make these required specifications. There is no mention of the purpose of the property or any reference to the customs and usages of the denomination. Instead, the deeds simply include the names of both the denomination and the Shelby church as grantees.

Under the language of the *Discipline*, it seems clear that local church property that is recorded as specified in the *Discipline* belongs to the denomination, and that a local church seeking to secede from the denomination could not keep such property. Here, though, the deeds were not recorded as set out in the *Discipline*. Furthermore, evidence at trial indicated that the decision to move into a new sanctuary in 1970 did not meet with the approval of the denomination. According to Section 2 of the *Discipline*'s articles on property in both 1970 and 1994, the local church's board of trustees was required to receive the approval of the bishop or ruling elder before securing any warranty deeds. This was not done by the trustees of the Shelby church. In fact, the denomination clearly expressed its *disapproval* of the Shelby church's plan to acquire the property now in dispute, but the Shelby church nevertheless did so, using its own money. We find that it would be inequitable, if not unconstitutional, for a court of this state to enforce the *Discipline* against the Shelby church *nunc pro tunc* when the denomination made no effort to enforce it at the time of any violations. As was true in *Looney*, "[t]he discipline of the denominational church manifest an implied assent of local churches to denominational control of local church property. This evidence, if not contradicted, would make the plaintiffs' case." Similarly to *Looney*, this evidence was contradicted. The question at trial then became one of the Shelby church's desire for independence prior to its ultimate secession from the denomination, and this question was one of fact to be resolved by the jury.

**[3]** The denomination's third contention within its first argument is that the verdict that the Shelby church and the denomination lacked a connectional relationship with regard to property matters did not support the take-nothing judgment against the denomination. The denomination emphasizes that in both *A.M.E. Zion* and *Looney*, the local churches were permitted to keep the property they owned independently before joining the connectional denomination. According to the denomination, the verdict in this action is inconsistent with *A.M.E. Zion* and *Looney*, since the Shelby church owned no property before joining the denomination and it therefore cannot keep the property acquired during its affiliation with the denomination.

We do not read *A.M.E. Zion* or *Looney* to limit a seceding church's property rights to that property it owned prior to joining a denomination. It is our understanding that references in these cases to taking property "independently owned prior to and retained during its limited affiliation with the general church", *see Looney*, 103 N.C. App. at 473-74, 405 S.E.2d at 813 (citing *A.M.E. Zion*, 64 N.C. App. at 413-14, 308 S.E.2d at 86), were based on decisions prior to *Looney's* explicit acceptance of a connectional church being congregational as to property matters. In *A.M.E. Zion*, we remanded the case and stated that "upon remand, the major question to be answered . . . *is whether the defendant local church was in fact in a hierarchical relationship with the plaintiff parent body with respect to property matters.*" *A.M.E. Zion*, 64 N.C. App. at 416, 308 S.E.2d at 87. Because that case involved different names on the deeds, we further stated that "[u]pon retrial, a determination must be made as to whether 'Union Chapel Methodist Church' would be entitled to fee simple ownership of lands deeded to a Methodist Episcopal Church in the 1873 deed and to an A.M.E. Zion Church in the 1976 deed." *Id.* at 416, 308 S.E.2d at 88. This indicates to us that ownership of property acquired over 100 years after the local church joined the denomination could have been kept by the local church when it left the denomination, depending upon the nature of the relationship between the denomination and local church. Although *Looney* recited the same "independently owned prior to" language as *A.M.E. Zion*, the ultimate result was that the local church was permitted to keep both the church property it acquired prior to joining the denomination in 1955 and the new sanctuary it constructed in 1972 and 1973, before leaving the denomination in 1988. In light of this interpretation of these cases, the denomination's argument fails. The trial court properly denied the denomination's motions for directed verdict and for judgment notwithstanding the verdict.

[4] The denomination's second argument on appeal is that the trial court erred by admitting, over objection, certain lay opinion testimony regarding the ownership of church property. The denomination objected to the testimony of Jackie Williams, who testified that the words "Mt. Sinai" were on the deeds "because it belonged to the members of Mt. Sinai"; of Jeffrey Ross, who stated that it was his understanding and intent as a trustee that the property belonged to the Shelby church; and of Reverend Verlon Pompey, who claimed it was his understanding that the property was to be held by the trustees of the church for the Shelby church. The denomination argues on appeal that the court's admission of the opinions expressed on these points by these witnesses was improper. *See* N.C. Gen. Stat. § 8C-1, Rule 602 (1992) (stating that lay witness must testify from his personal knowledge); N.C. Gen. Stat. § 8C-1, Rule 701 (1992) (limiting lay opinions to those which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue"); *see also Beam v. Kerlee*, 120 N.C. App. 203, 216, 461 S.E.2d 911, 921 (1995) (precluding testimony of the legal conclusion that a party "owns" property by adverse possession), *cert. denied*, 342 N.C. 651, 467 S.E.2d 703 (1996).

We hold that even if the trial court erred in admitting this testimony, the error was not reversible. "Where improperly admitted evidence merely corroborates testimony from other witnesses, we have found the error harmless." *State v. Wynne*, 329 N.C. 507, 519, 406 S.E.2d 812, 818 (1991). Reverend Ervin, who served as pastor of the Shelby church at the time of the 1970 property change, testified without objection that the congregation of the Shelby church intended to own the property and that "Mt. Sinai" was on the deeds "because the people thought they were buying the church for Mt. Sinai." Clara Louise Williams, a trustee of the Shelby church at that same time, stated without objection that she intended and understood that the trustees of the Shelby church would own the building and property. Similarly, the denomination did not object to Reverend Pompey's testimony that his understanding during the transactions in the 1980s was that the Shelby church owned the property and that he understood and intended throughout the time of his affiliation with the Shelby church that the property belonged to the local congregation.

In light of these facts, the testimony to which the denomination objected merely corroborated the unchallenged testimony without adding any new substantive information. Any error in admitting the

challenged testimony was harmless, and defendant's second argument is without merit.

For the reasons set out above, we hold that the parties to this action received a fair trial, free of prejudicial error.

No error.

Judges GREENE and HORTON concur.