IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1013

Filed 31 December 2024

New Hanover County, No. 23 CVS 2156

FIFTH AVENUE UNITED METHODIST CHURCH OF WILMINGTON, Plaintiff,

v.

THE NORTH CAROLINA CONFERENCE, SOUTHEASTERN JURISDICTION, OF THE UNITED METHODIST CHURCH, INC.; THE BOARD OF TRUSTEES OF THE NORTH CAROLINA CONFERENCE, SOUTHEASTERN JURISDICTION, OF THE UNITED METHODIST CHURCH, INC.; CONNIE SHELTON; TARA C. LAIN; DEBORAH BLACK; MIKE PRIDDY; REBECCA W. BLACKMORE; EARL HARDY; M. FRANCIS DANIEL; BECCA DETTERMAN; SUE W. HAUSER; HEATHER REAVES; ISMAEL RUIZ-MILLAN; DENA M. WHITE; JON STROTHER; KENNETH LOCKLEAR; DAVID BLACKMAN; and MICHAEL D. FRESE, Defendants.

Appeal by Plaintiff from order entered 15 September 2023 by Judge Tiffany Peguise-Powers in New Hanover County Superior Court. Heard in the Court of Appeals 4 March 2024.

*Coats & Bennett, PLLC, by Attorney Gavin B. Parsons, for the plaintiff-appellant.*

*Poyner Spruill, LLP, by Attorneys Eric P. Stevens and Colin R. McGrath, for the defendant-appellee.*

STADING, Judge.

This matter concerns a dispute between a church in Wilmington and its

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

denomination over the ownership of certain real estate (the "Property") originally deeded to the church. The church congregation has held services on the Property since 1889. That congregation is known as Fifth Avenue United Methodist Church of Wilmington ("Fifth Avenue"), the plaintiff in this action. The defendants (collectively, "Defendants"), represent the United Methodist Church denomination (the "UMC") and include: the North Carolina Conference, Southeastern Jurisdiction of the United Methodist Church (the "Conference"); the Board of Trustees of the Conference (the "Board"); and individually named defendants holding positions with the Conference.

Fifth Avenue appeals from an order denying its request for preliminary injunctive relief and granting Defendants' motions to dismiss all claims under N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), (6) (2023). After careful consideration, we hold that the trial court committed error by dismissing Fifth Avenue's claims for breach of contract, quiet title, judicial modification of trust, fraud, and constructive fraud pursuant to Rule 12(b)(1). The trial court also committed error by dismissing Fifth Avenue's claims for declaratory judgment and quiet title pursuant to Rule 12(b)(6). Furthermore, the trial court committed error by denying Fifth Avenue's request for preliminary injunctive relief. However, the trial court did not commit error by dismissing Fifth Avenue's claim for promissory estoppel pursuant to Rule 12(b)(6).

## I.  Background

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Fifth Avenue is a historic church established in 1847 and situated near the Cape Fear River in Wilmington. In 1889, the church constructed its historic sanctuary on the Property. The Property's tax value presently exceeds $2,000,000.00. In 1968, Fifth Avenue affiliated with the UMC. The UMC is governed by the *Book of Discipline* (the "BOD"), which sets forth rules and procedures for the UMC, its conferences, and its individual churches. The BOD is "published, and generally revised and updated every four years by the General Conference of the UMC."

The UMC's hierarchical structure as provided in the BOD consists of: (1) the General Conference, which is over the entire UMC denomination; (2) geographically based Annual Conferences, each led by a bishop; and (3) districts within each Annual Conference, led by a district superintendent. As an affiliate of the UMC, Fifth Avenue was a part of the Harbor District (the "District") within the North Carolina Annual Conference. Defendant Connie Shelton serves as the Bishop of the North Carolina Annual Conference (the "Bishop"). Defendant Tara C. Lain serves as the superintendent of the Harbor District (the "District Superintendent").

The dispute between Fifth Avenue and Defendants centers largely on the application of particular provisions in the BOD concerning the ownership of Fifth Avenue's church property. Among these provisions, paragraph 2501 provides, "[a]ll properties of United Methodist local churches . . . are held, *in trust*, for the benefit of the entire denomination, and the ownership and usage of church property is subject

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

to the [BOD]." The trust clause, paragraph 2501, "reflects the connectional structure of the Church by ensuring that the property will be used solely for purposes consonant with the mission of the entire denomination as set forth in the [BOD]." Furthermore, the trust clause states that it "is and always has been irrevocable, except as provided in the [BOD]. Property can be released from the trust [or] transferred free of trust . . . only to the extent authority is given by the [BOD]."

In 2019, the UMC General Conference enacted paragraph 2553 of the BOD, which provides circumstances and a process by which an individual church may disaffiliate from the UMC. According to the BOD, to disaffiliate from the UMC under this provision, a church must: (1) ask its district superintendent to call a "church conference . . . in accordance with [paragraph] 248"; (2) hold the conference within 120 days "after the district superintendent calls for the conference"; and (3) vote for disaffiliation by a "two-thirds (2/3) majority vote." In addition, paragraph 2553.4(c) provides that "[a] disaffiliating local church shall have the right to retain its real and personal, tangible and intangible property. All transfers of property shall be made prior to disaffiliation. All costs for transfer of title or other legal work shall be borne by the disaffiliating local church." Therefore, successful disaffiliation under paragraph 2553 allows for local church property to be released free of the trust clause in paragraph 2501. Even so, according to the District Superintendent, a local church's affirmative vote to disaffiliate "is not absolute, and . . . is not effective unless

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

. . . ratified by the annual conference through a majority vote of members at an annual conference session." Important here, Paragraph 248 works in conjunction with paragraph 2553 and operates as follows:

> [T]here are two ways in which a church conference can be called by the district superintendent. One is at his/her own discretion. The other is when he/she is requested to do so by the pastor, the church governing body, or 10 percent of the professing membership of the local church. In the latter cases, the district superintendent's duty is purely ministerial and is *not subject to his/her discretion.*

(emphasis added).

On 18 January 2023, Fifth Avenue contacted the Annual Conference inquiring about the disaffiliation process under paragraph 2553. Two weeks later, on 1 February 2023, Fifth Avenue's church council met and voted eight–to–two in favor of moving forward with the disaffiliation process. In light of this vote, Fifth Avenue proceeded with the steps outlined in paragraph 2553 by submitting the essential paperwork for the UMC to conduct a "Charge Conference" vote.[1] Then, Fifth Avenue requested that the District Superintendent "hold a Charge Conference for [Fifth Avenue] to conduct a vote on disaffiliation" pursuant to paragraphs 248 and 2553. Later that month, on 27 February 2023, the Annual Conference confirmed receipt of Fifth Avenue's disaffiliation request; noting that it had received all of the required information for Fifth Avenue to proceed with the church's disaffiliation vote.

---

[1] A "Charge Conference" is an official meeting of the local church membership.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Three weeks later, on 19 March 2023, Fifth Avenue's pastor informed the congregation that the District Superintendent would hold an informational meeting regarding disaffiliation on the following Sunday, 26 March 2023. On 21 March 2023, Fifth Avenue made an additional written request that the District Superintendent "schedule a Church Conference vote on disaffiliation in accordance with [paragraph] 2553 of the BOD prior to March 31, 2023." Fifth Avenue's bulletin, circulated in anticipation of the 26 March 2023 meeting, stated, "'Disaffiliation' informational meeting for **Professing Members only** this Sunday evening @ 6 pm, presented by Tara Lain, District Superintendent."

Without the knowledge of any member or pastor of Fifth Avenue, and in the context of requests to schedule a disaffiliation vote, on Friday, 24 March 2023—two days before Fifth Avenue's scheduled informational meeting with the District Superintendent—Defendants seized the Property and closed Fifth Avenue pursuant to paragraph 2549. In doing so, Defendants promptly adopted a "Resolution for Closure of Fifth Avenue" (the "Resolution of Closure"), and recorded an "Affidavit of Declaration of Ownership" (the "Affidavit of Ownership") of the Property in the New Hanover County Registry. All individual defendants, including the District Superintendent and the Bishop, signed the Resolution of Closure asserting that "exigent circumstances" warranted the immediate closure of Fifth Avenue and seizure of the Property under paragraph 2549.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

The "exigent circumstances" stated by Defendants to warrant closure of Fifth Avenue included: (1) declining membership and missional activity; and (2) Fifth Avenue's pending application with the Annual Conference for disaffiliation. Fifth Avenue retorts that the UMC's own data, published in 2020, shows that its average worship attendance "was higher than 235 of the 785 churches in the North Carolina Conference of the UMC." Nonetheless, Defendants reasoned that permanent closure under paragraph 2549.3(b) was appropriate "because [Fifth Avenue] no longer serve[d] the purpose for which it was organized and incorporated."

The BOD's *Disposition of Property of a Closed Local Church* clause, paragraph 2549.3(b), provides:

> At any time between sessions of annual conference, if the presiding bishop, the majority of the district superintendents, and the appropriate district board of church location and building all consent, they may, in their sole discretion, declare that exigent circumstances exist that require immediate protection of the local church's property, for the benefit of the denomination. In such case, title to all the real and personal, tangible and intangible property of the local church shall vest immediately in the annual conference board of trustees who may hold or dispose of such property in its sole discretion, subject to any standing rule of the annual conference. Exigent circumstances include, but are not limited to, situations where a local church no longer serves the purpose for which it was organized or incorporated . . . or where the local church property is no longer used, kept, or maintained by its membership as a place of divine worship of The United Methodist Church. When it next meets, the annual conference shall decide whether to formally close the local church.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Members of Fifth Avenue worshipped on the Property on the morning of Sunday, 26 March 2023, unaware that Defendants had effectively closed the church two days earlier. That Sunday evening, members of Fifth Avenue—still unaware of Defendants' Resolution of Closure—gathered at the local church for the scheduled disaffiliation informational meeting with its District Superintendent. However, the Bishop and the District Superintendent both attended and notified Fifth Avenue's pastor and membership that they had closed Fifth Avenue two days prior. The next day, Fifth Avenue was excluded from the Property by Defendants changing the locks to the fellowship hall and church sanctuary. Months later, between 15–17 June 2023, at its annual meeting, Defendants' Annual Conference voted to ratify the closure of Fifth Avenue's church due to exigent circumstances, explaining:

> The Effective Date of the Resolution for Closure of Fifth Avenue United Methodist Church . . . was March 24, 2023. At that time the Church had submitted its disaffiliation inquiry form and *was requesting a church council meeting to vote on disaffiliation*, but no meeting had been scheduled or vote held. Paragraph 2549.3(b) . . . clearly states that "*At any time* between sessions of annual conference, if the presiding bishop, the majority of the district superintendents, and the appropriate district board of church location and building all consent, they may, *in their sole discretion*, declare that exigent circumstances exist that require immediate protection of the local church's property . . . ." The [BOD] plainly establishes that the existence of exigent circumstances allows the presiding bishop, the Cabinet, and the appropriate district committee of church location and building to act at any time,

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

> regardless of what other circumstances or options a local
> church is addressing.

(first emphasis added).

On 27 June 2023, Fifth Avenue filed this action claiming that Defendants had no right to seize the Property and had otherwise deprived Fifth Avenue of their right to disaffiliate from the UMC—as granted by the BOD—and retain its Property free from any trust provision in the BOD. In its complaint, Fifth Avenue brought the following causes of action and requests for relief: (1) breach of contract; (2) promissory estoppel; (3) declaratory judgment; (4) fraud; (5) constructive fraud; (6) quiet title; (7) judicial modification of trust; and (8) preliminary and permanent injunction.[2] In response, Defendants moved to dismiss all of Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). *See* N.C. Gen. Stat. § 1A-1, R. 12(b)(1), (6). On 15 September 2023, after a hearing, the trial court granted Defendants' motion to dismiss all of Fifth Avenue's claims. Fifth Avenue timely entered its notice of appeal on 18 September 2023.

## II. Jurisdiction

The trial court's order dismissing all of Fifth Avenue's claims is a final judgment. Accordingly, our Court has jurisdiction to consider Fifth Avenue's appeal.

---

[2] On appeal, Fifth Avenue does not raise the issue of whether the trial court erred by denying its request for a permanent injunction. We therefore do not address the issue in this opinion. N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs.").

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

N.C. Gen. Stat. § 7A-27(b)(1) (2023).

### III.    Analysis

Fifth Avenue submits several issues for our consideration: Whether the trial court committed error by (1) dismissing Fifth Avenue's claims for breach of contract, fraud, constructive fraud, quiet title, and judicial modification of trust for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); (2) dismissing Fifth Avenue's claims for promissory estoppel, declaratory judgment, and quiet title for failure to state a claim pursuant to Rule 12(b)(6); and (3) denying Fifth Avenue's request for preliminary injunctive relief. For the reasons below, we hold that the trial court erred in dismissing Fifth Avenue's claims for breach of contract, quiet title, judicial modification of trust, fraud, and declaratory judgment. But the trial court did not err in dismissing Fifth Avenue's claim for promissory estoppel. We also hold that the trial court erred in denying Fifth Avenue's request for injunctive relief.

### A. Ecclesiastical Entanglement – Rule 12(b)(1)

In the matter *sub judice*, the trial court granted Defendants' motion to dismiss the following claims under N.C. Gen. Stat. § 1A-1, Rule 12(b)(1): (1) breach of contract, (2) fraud, (3) constructive fraud, (4) quiet title, and (5) judicial modification of trust. Fifth Avenue contends that the trial court erroneously dismissed all of these claims because they "do not require examination, interpretation, or determination of religious doctrine." "We review Rule 12(b)(1) motions to dismiss for lack of subject

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

matter jurisdiction de novo and may consider matters outside the pleadings." *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Bartley v. City of High Point*, 381 N.C. 287, 293, 873 S.E.2d 525, 532 (2022) (quoting *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009)).

"Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act . . . ." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006). "The principle that civil courts lack subject matter jurisdiction to resolve disputes involving 'purely ecclesiastical questions and controversies' has long been recognized." *Nation Ford Baptist Church Inc. v. Davis*, 382 N.C. 115, 121, 876 S.E.2d 742, 750 (2022) (quoting *Braswell v. Purser*, 282 N.C. 388, 393, 193 S.E.2d 90, 93 (1972)). Indeed, "[w]hen the resolution of a dispute requires the interpretation of religious doctrines or spiritual practices, the court must abstain from deciding purely religious questions." *Davis*, 382 N.C. at 116, 876 S.E.2d at 747. "The constitutional prohibition against court entanglement in ecclesiastical matters is necessary to protect First Amendment rights identified by the 'Establishment Clause' and the 'Free Exercise Clause.'" *Harris*, 361 N.C. at 270, 643 S.E.2d at 569 (citation omitted). The *Davis* Court explained:

> The impermissible entanglement doctrine limits a court's authority to resolve disputes involving religious

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

organizations. Courts possess jurisdiction over only those claims that can be resolved through application of neutral principles of secular law that govern all similar organizations and entities. A court must carefully distinguish between claims that will necessarily require it to become entangled in spiritual matters and those that can potentially be resolved purely on civil grounds. Essentially, if the issues raised in a claim can be "resolved on the basis of principles of law equally applicable to" an "athletic or social club," then the court has jurisdiction to proceed. If the issue raised in a claim requires the court to "determine ecclesiastical questions" or wade into "a controversy over church doctrine," then a court may not proceed because doing so would be "wholly inconsistent with the American concept of the relationship between church and state."

382 N.C. at 128, 876 S.E.2d at 754 (first quoting *Atkins v. Walker*, 284 N.C. 306, 319, 200 S.E.2d 641, 650 (1973); then quoting *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 445–46, 89 S. Ct. 601, 604 (1969)).

But "the First Amendment does not provide religious organizations absolute immunity from civil liability." *Johnson v. Antioch United Holy Church, Inc.*, 214 N.C. App. 507, 510–11, 714 S.E.2d 806, 810 (2011). "Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." *Atkins*, 284 N.C. at 316, 200 S.E.2d at 648. "While the civil courts have no jurisdiction over and no concern with purely ecclesiastical questions and controversies due to constitutional guarantees of freedom of religious profession and worship, the courts do have jurisdiction to determine property rights which are involved in, or arise from,

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

a church controversy." *Looney v. Cmty. Bible Holiness Church*, 103 N.C. App. 469, 473, 405 S.E.2d 811, 813 (1991). "Where civil, contract[ ] or property rights are involved, the courts [can] inquire as to whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules." *Davis*, 382 N.C. at 123, 876 S.E.2d at 751 (quoting *W. Conf. of Original Free Will Baptists v. Creech*, 256 N.C. 128, 140–41, 123 S.E.2d 619, 627 (1962)).

"[T]o determine whether a civil court has jurisdiction to entertain a dispute, '[t]he dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine.'" *Davis*, 382 N.C. at 123, 876 S.E.2d at 751 (quoting *Smith v. Privette*, 128 N.C. App. 490, 494, 495 S.E.2d 395, 398 (1998)). "The specific relief a plaintiff seeks does not dictate a court's jurisdiction to adjudicate a claim. Rather, a court must have jurisdiction over 'the *nature* of the case and the *type* of relief sought in order to decide a case,' not over every possible fact pattern and legal issue connected to a complaint." *Davis*, 382 N.C. at 127, 876 S.E.2d at 754 (quoting *Catawba County ex rel. Rackley v. Loggins*, 370 N.C. 83, 88, 804 S.E.2d 474, 478 (2017)).

### 1. *Quiet Title and Judicial Modification of Trust*

Fifth Avenue argues that the trial court erred in dismissing its quiet title and judicial modification of trust claims for lack of subject matter jurisdiction, contending that these claims can be resolved by the application of neutral legal principles.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Specifically, Fifth Avenue contends that the trial court has subject matter jurisdiction to consider its property and trust claims because there remains a genuine, secular question of whether it was in a connectional relationship with the UMC concerning the Property. Fifth Avenue maintains as such because none of the deeds pertaining to the Property refer to the trust clauses contained in the BOD, "save one green space parcel conveyed in 1986." After carefully considering our precedents resolving similar disputes, we agree.

"[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment." *Atkins*, 284 N.C. at 316, 200 S.E.2d at 648 (quoting *Presbyterian Church in United States*, 393 U.S. at 449, 89 S. Ct. at 606). "[T]here are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded." *Atkins*, 284 N.C. at 312, 200 S.E.2d at 645. "As a general rule the parent body of a connectional church has the right to control the property of local affiliated churches, and, as a corollary, this right will be enforced in civil courts." *Looney*, 103 N.C. App. at 473, 405 S.E.2d at 813; *see also A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C. App. 391, 412–13, 308 S.E.2d 73, 85 (1983). That said, "a local church may have retained sufficient independence from the general church so that it

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

reserved its right to withdraw at any time, and, presumably take along with it whatever property it independently owned prior to and retained during its limited affiliation with the general church." *Looney*, 103 N.C. App. at 473–74, 405 S.E.2d at 813.

Fifth Avenue offers case law in support of the notion that property and trust disputes involving connectional churches can be resolved in civil courts. *See A.M.E. Zion Church*, 64 N.C. App. at 416, 308 S.E.2d at 87 (remanded to determine "whether the defendant local church was . . . in a hierarchical relationship with the plaintiff body with respect to property matters."); *see also Looney*, 103 N.C. App. at 474, 405 S.E.2d at 813–14 (noting that there is a distinction between connectional and hierarchical churches, that a connectional church may be congregational with respect to property matters, and that a question of this nature may be submitted to a jury); *see also Fire Baptized Holiness Church v. McSwain*, 134 N.C. App. 676, 680–81, 518 S.E.2d 558, 560 (1999) (affirming that whether a church had surrendered its property to the denomination was a proper jury question under *Looney*).

For example, in *Looney*, our Court considered "whether the [ ] local church gave up its right to own and control [its] local church property by affiliating with the Church of God denomination." 103 N.C. App. at 471, 405 S.E.2d at 812. The facts of *Looney* provide that the local church affiliated with the Church of God, beginning in 1956, and its "trustees conveyed the church property to . . . [the] trustees for the

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Community Church of God." *Id.* at 474, 405 S.E.2d at 813–14. Later, the denomination "altered its policy statement" concerning how its constituents should lead their daily lives. *Id.* at 472, 405 S.E.2d at 812. As a result of that change, the local church disassociated from the denomination. *Id.* at 472, 405 S.E.2d at 813. Then, the plaintiff "dismissed the Community Church of God local board of trustees[,] appointed a successor state board of trustees," and "executed deeds conveying to themselves title to the real property occupied by the [local church]." *Id.* at 473, 405 S.E.2d at 813. The *Looney* Court noted "three central points":

> Viewing the evidence in the light most favorable to defendant non-movant, three central points appear to form the decisive framework.
>
> (1) Defendant's predecessor congregation or church affiliated with the plaintiff denominational church in 1955 and remained so affiliated until 1988.
>
> (2) The discipline of the denominational church manifest an implied assent of local churches to denominational control of local church property. This evidence, if not contradicted, would make the plaintiffs' case.
>
> (3) The third point is the nature of the property transactions themselves. When the defendant local church affiliated with the plaintiff denominational church, the property was deeded to trustees of, or for, the local church, not to the denominational church or to trustees of, or for, the denominational church. This pattern was followed in all property transactions during the entire period of affiliation. Thus this evidence created a jury question as to whether *as to church property* the local church intended to establish a connectional relationship with the denominational church.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

*Id.* Ultimately, our Court held that the "evidence created a jury question as to whether[,] *as to church property*[,] the local church intended to establish a connectional relationship with the denominational church." *Id.* at 474, 405 S.E.2d at 813–14

Here, the four parcels making up the Property consist of: (1) the church sanctuary; (2) the fellowship hall; (3) parking lots; and (4) undeveloped green space. Fifth Avenue's quiet title and judicial modification of trust claims hinge on the fact that only one of these four parcels was deeded to the UMC, its trustees, or the denomination in general—the "one green space parcel conveyed in 1986." That 1986 deed stated, "In trust, that said premises shall be kept, maintained, and disposed for the benefit of The United Methodist Church and subject to the usages and the Discipline of The United Methodist Church." In contrast, Plaintiff's 1969 deed—the year after it affiliated with the UMC—conveyed part of the Property to the "Trustees of the Fifth Avenue United Methodist Church of Wilmington," thereby not adhering to the language set out in paragraph 2503 of the BOD.[3] The deeds to the other parcels used language similar to the 1969 deed, conveying part of the Property to the

---

[3] Paragraph 2503 of the BOD provides: "[A]ll written instruments of conveyance by which premises are held or hereafter acquired for use as a place of divine worship or other activities for members of The [UMC] shall contain the following trust clause: *In trust, that said premises shall be used, kept, and maintained as a place of divine worship of the United Methodist ministry and members of The [UMC]; subject to the Discipline, usage, and ministerial appointments of said Church as from time to time authorized and declared by the General Conference and by the annual conference within whose bounds the said premises are situated. This provision is solely for the benefit of the grantee, and the grantor reserves no right or interest in said premises.*"

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

"Trustees of the Fifth Avenue Methodist Church" and the "Trustees of the Fifth Street Methodist Church," respectively, including the church sanctuary.

As in *Looney*, the BOD "manifest[ed] an implied assent of local churches to denominational control of local church property" by way of the mandatory trust clause in paragraphs contained in the BOD. *Id.* There thus remains a genuine question "whether as to church property," Fifth Avenue "intended to establish a connectional relationship with the denominational church." *Id.* And as the *Looney* Court provided, in scenarios such as these, "the courts do have [subject matter] jurisdiction to determine property rights which are involved in, or arise from, a church controversy." *Id.* at 473, 405 S.E.2d at 813.

Similarly, in *African Methodist Episcopal Zion Church*, our Court determined "that civil courts may settle certain types of disputes arising from a church controversy by applying or following the rules of the [ ] Church Discipline." 64 N.C. App. at 413–14, 308 S.E.2d at 86. In that case, the local church "sought to disaffiliate from the A.M.E. Zion Church, apparently as a result of an increase in assessments levied by the 1976 General Conference." *Id.* at 394, 308 S.E.2d at 75. The local church thereafter sent a letter signed by its board of trustees notifying the denomination of "their decision to withdraw . . . ." *Id.* In response, the denomination stated that while the local church may disaffiliate, its "property must remain within the Connection."

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

*Id.* at 395, 308 S.E.2d at 76.  The denomination required all property to be held in a

trust comparable to the one in the present case:

> [B]eginning with the 1968 Discipline at Paragraph 434,
> Section 2, it is specifically provided that the absence of the
> 'trust clause' in deeds and conveyances previously executed
> does not relieve a local church from connectional
> responsibilities.  Neither the 1873 deed for the First Tract
> nor the 1976 deed for the Second Tract contained the trust
> language required by the 1940 and subsequent Disciplines.

*Id.* at 396–97, 308 S.E.2d at 76.  The trust clause provided that a local church's failure

to expressly include the trust language shall not absolve that local church of its

responsibility to the denomination, if the intent of the local church is shown by any

or all of the following:

> (a) the conveyance of the property to the trustees of the
> local African Methodist Episcopal Zion Church or any of its
> predecessors;
>
> (b) the use of the name, customs, and policy of the African
> Methodist Episcopal Zion Church in such a way as to be
> thus known to the community as a part of this
> denomination;
>
> (c) the acceptance of the pastorate of ministers appointed
> by a bishop of the African Methodist Episcopal Zion
> Church, or employed by the presiding elder of the district
> in which it is located.

*Id.* at 396 n.1, 308 S.E.2d at 76.

Relying on the trust clause language, the denomination asserted that the local

church manifested an intent and desire to be bound by the trust clause with respect

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

to its church property. *Id.* at 397, 308 S.E.2d at 76–77. In response—similar to the present matter—the local church contended "that the 1873 deed does not contain the trust language required by the . . . Discipline and that the property has never been conveyed to . . . [the denomination]." *Id.* at 400, 308 S.E.2d at 78. The trial court ultimately determined that "[t]he language contained in the Discipline which attempts to impose a trust upon the property based upon usage and practice of the local church is not sufficient to impose such a trust." *Id.* at 405, 308 S.E.2d at 81. The trial court further determined that "[n]o trust in favor of the African Methodist Episcopal Zion Church in America was created as concerns the property . . . ." *Id.* Upon review, this Court vacated and remanded the trial court's judgment for a trial *de novo* to determine "whether the defendant local church was in fact in a hierarchical relationship with the plaintiff parent body with respect to property matters." *Id.* at 416, 308 S.E.2d at 87 (emphasis omitted).

Like our precedents discussed above, we agree that Fifth Avenue has alleged a dispute against Defendants regarding its right to the Property. And as in those cases, resolution of this dispute invokes separate and distinct legal principles outside the interpretation of the UMC's religious doctrine. *See A.M.E. Zion Church*, 64 N.C. App. at 412, 308 S.E.2d at 85 ("[T]he courts do have jurisdiction as to civil, contract and property rights which are involved in, or arise from, a church controversy."); *see also Looney*, 103 N.C. App. at 473, 405 S.E.2d at 813 ("[T]he courts do have

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

jurisdiction to determine property rights which are involved in, or arise from, a church controversy."). Considering the foregoing, the trial court does not lack subject matter jurisdiction since Fifth Avenue's claims for quiet title and judicial modification of trust may be settled by neutral principles of law. *A.M.E. Zion Church*, 64 N.C. App. at 414-15, 308 S.E.2d at 87 (citation omitted) ("[T]he 'discipline' of a hierarchical Methodist Church, as it pertains to property of local churches, may be considered a 'neutral principle of law' in the resolution of church property disputes between an affiliated local church and its parent body."); *Presbyterian Church in United States*, 393 U.S. at 449, 89 S. Ct. at 606 ("Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded.").

## 2. *Breach of Contract*

Fifth Avenue next argues that even if the Property is subject to a trust under the BOD, the trial court erred in dismissing its claim arising from its right to disaffiliate and retain the Property free of the trust clause under paragraph 2553. Fifth Avenue contends that its breach of contract claim survives dismissal at this stage because it does not require a determination of ecclesiastical issues and can be settled by neutral principles of contract law. Fifth Avenue maintains that Defendants failed to follow the disaffiliation procedures set out in paragraph 2553 by

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

not allowing a church conference vote within 120 days, and under *Nation Ford Baptist Church Inc. v. Davis,* a court has jurisdiction to review such an issue. 382 N.C. 115, 876 S.E.2d 742. For the reasoning below, we agree and hold that the trial court committed error by dismissing Fifth Avenue's breach of contract claim because determining whether Defendants "acted within the scope of their authority" and "observed the organization's own organic forms and rules is founded in neutral principles of secular law." *Id.* at 124, 876 S.E.2d at 752 (quoting *Creech*, 256 N.C. at 140–41, 123 S.E.2d at 627).

In *Davis*, our Supreme Court stated that "[w]here civil, contract[ ] or property rights are involved, the courts [can] inquire as to whether the church tribunal acted within the scope of its authority and observed its own organic forms and rules." *Davis*, 382 N.C. at 123, 876 S.E.2d at 751 (brackets in original) (quoting *Creech*, 256 N.C. at 140–41, 123 S.E.2d at 627). In that case, the Court held that the "claim for a declaratory judgment establishing which bylaws apply, whether the [c]hurch followed those bylaws, and whether there was an employment contract . . . can potentially be resolved solely by application of neutral principles of corporate, contract, and employment law." *Davis,* 382 N.C. at 128, 876 S.E.2d at 754.

Similarly, here, the core of the issues presented by Fifth Avenue's breach of contract claim asked the trial court to determine whether there was a contract between the parties, and if so, whether the UMC followed its own procedures. *Id.*

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Paragraph 2553 of the BOD granted local churches the right to disaffiliate from the UMC and retain their property free of any trust obligation.[4]  Considering the trust clause of paragraph 2501, the trust may be revoked "as provided in the [BOD]."  In this case, paragraph 2553 of the BOD provided a mechanism for Fifth Avenue to "retain its real and personal, tangible and intangible property."  The process highlights multiple steps, one of which is that the District Superintendent call for the church conference, which "shall be conducted in accordance with [paragraph] 248 . . . and shall be held within one hundred twenty (120) days," for the membership to vote on disaffiliation.  Per paragraph BOD 248, if a local church governing body requests a church conference vote on disaffiliation, the district superintendent has no discretion in the matter and must do so.  Thus, at this stage in the litigation, Fifth Avenue's breach of contract claim simply asks whether Defendants' actions complied with the steps outlined in BOD paragraphs 248 and 2553, not the substantive merits of their decision to permanently close Fifth Avenue under paragraph 2549.  *See Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 329, 605 S.E.2d 161, 164 (2004) (citation omitted) ("While the Courts can under no circumstance referee ecclesiastical disputes, they can adjudicate 'property disputes,' provided that this can

---

[4] The right to disaffiliate is *expressly limited* by the language of paragraph 2553 as follows: "The choice by a local church to disaffiliate with The [UMC] under this paragraph shall be made in sufficient time for the process for exiting the denomination to be complete prior to December 31, 2023.  The provisions of [paragraph] 2553 expire on December 31, 2023 and shall not be used after that date."

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

be done without resolving underlying controversies over religious doctrine."). And moreover, determining whether Defendants followed their own procedures does not require a civil court "to interpret or weigh church doctrine." *Davis*, 382 N.C. at 123, 876 S.E.2d at 751 (quoting *Smith*, 128 N.C. App. at 494, 495 S.E.2d at 398). Rather, a resolution of the breach of contract claim asks for a determination of whether the parties performed pursuant to the plain language of their contractually agreed upon terms; in this case, the terms of BOD paragraphs 248 and 2553.

Our *de novo* review thus leads us to hold that the trial court committed error by dismissing Fifth Avenue's breach of contract claim pursuant to Rule 12(b)(1). The trial court has not been divested of subject matter jurisdiction over Fifth Avenue's breach of contract claim because it can be resolved by neutral principles of contract law under *Davis*, 382 N.C. at 123, 876 S.E.2d at 751 (citations omitted).

### 3. *Fraud and Constructive Fraud*

Fifth Avenue next submits that the trial court committed error by dismissing its claims for fraud and constructive fraud because they do not require the court to examine or determine ecclesiastical issues. More precisely, Fifth Avenue contends that whether Defendants colluded to take the Property "under the guise of legitimate action can be determined without delving into the validity of the reasons" provided for closure. After scrutinizing the record and applicable law, we agree.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

A claim for fraud is established by "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007) (citation omitted). But "[a] claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud." *Id.* at 528, 649 S.E.2d at 388 (citation omitted). "[T]his cause of action arises where a confidential or fiduciary relationship exists, which has led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff." *Id.* (internal quotation marks and citation omitted).

When Defendants adopted the Resolution of Closure, purporting accordance with the exigent circumstances clause of BOD paragraph 2549, one of Defendants' articulated justifications was that "membership and missional activity of the Church has recently declined . . . ." The Resolution of Closure noted that "the Church has a current membership of 205 and average weekly attendance of approximately 20 members[.]" Additionally, Defendants referenced "local needs in the community" as exigency warranting closure of the church. But a civil court "cannot answer the question of whether the [governing body of the church] 'in good conscience . . . act[ed] honestly, in good faith and in the best interests of the [c]hurch.'" *Davis*, 382 N.C. at 125, 876 S.E.2d at 752. Here, we do not seek to tread on the sanctity of church

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

doctrine. Therefore, without specifically holding so, we note that inquiring into Fifth Avenue's fraud and constructive fraud claims on those bases *alone* could impermissibly require a civil court to determine whether these particular claimed exigent circumstances were proclaimed in good faith and in accordance with church doctrine. *Id.*

Yet, remarkable here, Defendants cited another exigency, that "the congregation has initiated a procedure seeking . . . to disaffiliate from the United Methodist Church[.]" Defendants, by their own actions, have intertwined the contractual dispute as a purported exigent circumstance underlying closure—which can be resolved by application of neutral principles of contract law. *See id.* at 123, 876 S.E.2d at 751. The BOD, which Defendants rely upon to support dismissal of the fraud and constructive fraud claims under Rule 12(b)(1), provided the mechanism for Fifth Avenue's disaffiliation. Defendants now seek to use the BOD and this mechanism against Fifth Avenue. And at this stage in the proceedings, our *de novo* review considers the contents of Fifth Avenue's pleading as well as other evidence, such as affidavits. *Smith*, 128 N.C. App. at 493, 495 S.E.2d at 397 ("Unlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation [of a Rule 12(b)(1) motion] to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing."). This cited exigency—disaffiliation— considered in conjunction with other representations by Defendants, can be resolved

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

by application of neutral principles of contract law and does not require the interpretation or weighing of church doctrine. *Davis*, 382 N.C. at 123, 876 S.E.2d at 751.

According to Fifth Avenue's complaint, "the Conference confirmed to [Fifth Avenue] and its Pastor that it had in fact received all information and material necessary for Plaintiff to take the next step in the disaffiliation process and conduct a Church Conference vote." This information included copies of Fifth Avenue's real property deeds. The complaint also alleged that Defendants represented to Fifth Avenue that it would have a meeting about disaffiliation—mandated by protocols outlined in the BOD—but the meeting turned into a surprise announcement about the church's closure. In the context of the representations and the pendency of the scheduled meeting, unbeknownst to Fifth Avenue, Defendants adopted the Resolution of Closure and filed their Affidavit of Ownership of the Property. Thus, Fifth Avenue's fraud claims do not hinge on whether Defendants' reasons provided for closure under paragraph 2549 were made "honestly, in good faith and in the best interests of the [c]hurch.'" *Davis*, 382 N.C. at 125, 876 S.E.2d at 752. Rather, the claims, questioning whether the representations made by Defendants concerning the "information meeting" and receiving the necessary paperwork to proceed with a "Church Conference vote," do not fall within the protections of the impermissible entanglement doctrine. *See id.* at 128, 876 S.E.2d at 754.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

Adding support to Fifth Avenue's claims, the District Superintendent conceded that with the closure of other "churches in the Harbor District . . . under [her] leadership," she "led the congregation in an assessment . . . of the church," and "depending on the results of the study, [she] would preside over a church conference in which the assembled members voted on whether to close." But in this instance, the District Superintendent stated that since Fifth Avenue "already indicated it did not wish to close but instead wanted to disaffiliate . . . discussion would not have been productive." In any event, the day after the purported disaffiliation meeting, Defendants changed the locks on the sanctuary and fellowship hall. Fifth Avenue alleges that Defendants' actions deprived it of the right to vote on disaffiliation, caused a cloud on the Property's title, and prevented its members from worshipping and conducting activities. Accordingly, Fifth Avenue's complaint and affidavits included in the record allow for an adequate assessment of the elements of fraud and constructive fraud claims without delving into doctrine. The trial court thereby committed error by dismissing Fifth Avenue's fraud and constructive fraud claims pursuant to Rule 12(b)(1).

## B. Failure to State a Claim—Rule 12(b)(6)

In the present matter, the trial court granted Defendants' motion to dismiss the following claims pursuant to Rule 12(b)(6): promissory estoppel, declaratory judgment, and quiet title. Fifth Avenue contends that the trial court committed error

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

by granting Defendants' motion on this basis because it sufficiently stated claims for all three causes of action.

"On appeal from a motion to dismiss under Rule 12(b)(6) this Court reviews *de novo* 'whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted[.]'" *Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008) (citation omitted) (brackets and ellipses in original). "This Court views the allegations in the complaint in the light most favorable to the non-moving party." *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 291, 826 S.E.2d 746, 756 (2019). "[U]nder de novo review, the appellate court as the reviewing court considers the Rule 12(b)(6) motion to dismiss anew: It freely substitutes its own assessment of whether the allegations of the complaint are sufficient to state a claim for the trial court's assessment." *Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679, 878 S.E.2d 798, 800 (2022).

Dismissal is appropriate where: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). However, "[a] complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

sufficient to give a defendant notice of the nature and basis of plaintiffs' claim so as to enable him to answer and prepare for trial." *McAllister v. Khie Sem Ha*, 347 N.C. 638, 641, 496 S.E.2d 577, 580 (1998) (quoting *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1980)).

### 1. *Declaratory Judgment*

Fifth Avenue submits that the trial court committed error by dismissing its claim for declaratory judgment. In doing so, Fifth Avenue maintains that it sufficiently alleged facts to establish this claim and survive a motion to dismiss under Rule 12(b)(6). After conducting a *de novo* review, we agree.

North Carolina's Declaratory Judgment Act is codified under N.C. Gen. Stat. § 1-253 (2023) ("Courts of record permitted to enter declaratory judgments of rights, status and other legal relations"). "A motion to dismiss for failure to state a claim is seldom appropriate 'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988) (citation omitted). The "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Morris*, 89 N.C. App. at 557, 366 S.E.2d at 558 (quoting *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 381 (1987)). "The motion is allowed only when 'there is no basis for declaratory relief, as when the complaint does not allege an actual, genuine existing controversy.'" *Morris*, 89 N.C.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

App. at 557, 366 S.E.2d at 558 (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974)).  A claim for declaratory judgment is sufficiently stated if:

> (1) a real controversy exists between or among the parties to the action; (2) that such controversy arises out of *opposing contentions* of the parties, made in good faith, *as to the validity* or construction of a . . . *contract in writing*, or as to the validity or construction of a statute, or municipal ordinance, contract, or franchise; and (3) that the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action, the court has jurisdiction, and on the facts admitted in the pleadings or established at the trial, may render judgment, declaring the rights and liabilities of the respective parties, as between or among themselves, and according relief to which the parties are entitled under the judgment.

*N.C. Consumers Power, Inc.,* 285 N.C. at 449, 206 S.E.2d at 188 (emphasis added).

North Carolina has long allowed declaratory judgment actions to interpret written instruments.  *LDDC, Inc. v. Pressley*, 71 N.C. App. 431, 434, 322 S.E.2d 416, 418 (1984); *see also York v. Newman*, 2 N.C. App. 484, 489, 163 S.E.2d 282, 286 (1968) (citation omitted) ("A declaratory action is an appropriate remedy to perform the function of the customary action to quiet title."); *see also Johnson v. Wagner,* 219 N.C. 235, 236, 13 S.E.2d 419, 420 (1941) ("An action to determine the rights of the parties under a charitable trust created by will, in which the trustees and all of the agencies

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

who are beneficiaries of the trust are made parties, is justiciable under the Declaratory Judgment Act.").

In its complaint, Fifth Avenue requested that the trial court declare:

    a. That the trust has terminated because the purpose of the trust ha[s] become unlawful, contrary to public policy, or impossible to achieve;

    b. That to the extent the trust has not terminated, it is revocable; and

    c. That Plaintiff is entitled to the quiet, exclusive, uninterrupted, and peaceful possession of its property (real and personal) without any interference from Defendants.

Our case law shows that Fifth Avenue sufficiently stated a claim for declaratory relief because it demonstrated that: (1) "a real controversy exist[ed]" concerning the Property; (2) the controversy was the result of "opposing contentions of the parties . . . as to the construction of" paragraphs 248, 2501, 2503, and 2553 of the BOD; and (3) both Fifth Avenue and Defendants may have legal rights that could be adjudicated by a court of law as discussed in our analyses about the claims for quiet title and judicial modification of trust. *Id.* Even if the trial court determined that Fifth Avenue "may not be able to prevail," that reasoning alone is not enough to justify dismissal pursuant to Rule 12(b)(6). *Morris*, 89 N.C. App. at 557, 366 S.E.2d at 558 (citation omitted).

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

We therefore hold that the trial court committed error by dismissing Fifth Avenue's claim for declaratory judgment because its "complaint alleged sufficient facts to establish the existence of a genuine controversy and to survive [D]efendants' motion to dismiss under Rule 12(b)(6)." *Id.*

## 2. *Quiet Title*

Fifth Avenue next submits that the trial court committed error by dismissing its claim for quiet title because it sufficiently stated such a claim. In support of its contention, Fifth Avenue cites a case from our Court providing the two requirements to establish a *prima facie* case for removing cloud upon title: "(1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim in the land adverse to plaintiff's title, estate or interest." *Hensley v. Samel*, 163 N.C. App. 303, 307, 593 S.E.2d 411, 414 (2004) (citation omitted). After consideration, we agree the complaint fulfills both requirements to establish a *prima facie* case for quiet title.

The complaint asserted Fifth Avenue has an interest in the Property. *See id.* Fifth Avenue claimed it "received its real property from donors who wanted [its] congregation to have use of the church sanctuary and property forever." Deeds were attached to the complaint in support of this contention. The complaint also alleged Fifth Avenue "acquired and held title to its real property (save one parcel acquired in 1986 [containing language from the trust clauses in the BOD]) prior to . . . its later

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

affiliation with the UMC." The complaint further alleged that Defendants assert a claim in the Property adverse to Fifth Avenue's interest on account of the BOD's "denominational trust grant[ing] them control over [Fifth Avenue's] real property . . . ." *See id.*

Our review of the claims alleged on the face of the complaint, viewed in the light most favorable to the non-moving party, shows that Fifth Avenue's quiet title claim meets the essential requirements to survive a motion to dismiss. *See McAllister*, 347 N.C. at 641, 496 S.E.2d at 580; *see also BDM Invs.*, 264 N.C. App. at 291, 826 S.E.2d at 756. Consequently, we hold the trial court's dismissal of Fifth Avenue's quiet title claim pursuant to Rule 12(b)(6) was in error.

### 3. *Promissory Estoppel*

Fifth Avenue next submits that "there is a good faith basis to extend the law and recognize its claim for promissory estoppel." We agree with Fifth Avenue that promissory estoppel has not been officially recognized as an affirmative cause of action under North Carolina law. *See Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.*, 86 N.C. App. 540, 545, 358 S.E.2d 539, 542 (1987). Rather, "[t]he North Carolina cases which have applied the doctrine have only done so in a defensive situation, where there has been an intended abandonment of an existing right by the promisee. North Carolina case law has not approved the doctrine for affirmative relief." *Id.* at 543, 358 S.E.2d at 541. Presently, *state* court

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

precedent does not extend this doctrine to cases such as the present one. *See Clement v. Clement*, 230 N.C. 636, 55 S.E.2d 459 (1949); *see also Wachovia Bank & Tr. Co., N.A. v. Rubish*, 306 N.C. 417, 293 S.E.2d 749 (1982); *see also Home Elec. Co. of Lenoir*, 86 N.C. App. 540, 358 S.E.2d 539; *contra Allen M. Campbell Co., Gen. Contractors, Inc. v. Virginia Metal Indus., Inc.,* 708 F.2d 930 (4th Cir. 1983). We hold that the trial court's dismissal of this claim was proper.

## C. Preliminary Injunction

In its final submission, Fifth Avenue contends that the trial court committed error by not issuing preliminary injunctive relief because it demonstrated a likelihood of success on the merits and irreparable injury if not granted. *See* N.C. Gen. Stat. § 1-485 (2023) (when preliminary injunction issued). We agree.

"The scope of appellate review in the granting or denying of a preliminary injunction is essentially *de novo*. '[A]n appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself.'" *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 696 (1984) (citation omitted and brackets in original). A preliminary injunction is warranted "(1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." *Emp't Staffing Grp., Inc. v. Little*, 243 N.C. App. 266, 270, 777 S.E.2d

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

309, 312 (2015) (citation omitted); *see also Setzer v. Annas*, 286 N.C. 534, 537, 212 S.E.2d 154, 156 (1975). "The purpose of a preliminary injunction is ordinarily to preserve the *status quo* pending trial on the merits. Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities." *State ex rel. Edmisten v. Fayetteville St. Christian Sch.*, 299 N.C. 351, 357, 261 S.E.2d 908, 913 (1980).

Fifth Avenue contends that the trial court erred by denying its preliminary injunction because it is likely that Defendants breached their contract by failing to call a church conference vote within 120 days of submitting a disaffiliation application.[5] The record evidence demonstrates that Fifth Avenue requested Defendants to call the church conference vote by adhering to the procedures set out in BOD paragraphs 248 and 2553. Moreover, Fifth Avenue's "church governing body" requested that Defendants schedule the vote on two occasions. The first request occurred before the District Superintendent scheduled the "informational meeting." Yet, per paragraph 248 of the BOD, if a local church governing body requests a church conference vote on disaffiliation, the district superintendent has no "discretion" in the matter. Under these circumstances, "the district superintendent's duty is purely ministerial . . . ." In this case, the District Superintendent failed to schedule the

---

[5] Although Fifth Avenue could conceivably succeed on the merits of several of its proffered claims, including quiet title, judicial modification of trust, fraud, and constructive fraud, we limit our analysis to the contract claim.

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

meeting within 120 days of receiving the disaffiliation application from Fifth Avenue's governing body. Fifth Avenue has thus demonstrated a likelihood of success on the merits with respect to at least its breach of contract claim. *Little*, 243 N.C. App. at 70, 777 S.E.2d at 312.

Fifth Avenue has also demonstrated that it is likely to suffer irreparable injury if the injunction is not granted given that it has been permanently excluded from the Property. *Id.* On 27 March 2023, Defendants placed locks on Fifth Avenue's church, effectively ousting it from the Property. Since then, Fifth Avenue has been unable to open its doors to over 200 active members in its community. As a result, the injury that Fifth Avenue faces is "both real and immediate." *Bd. of Light & Water Comm'rs v. Parkwood Sanitary Dist.*, 49 N.C. App. 421, 423, 271 S.E.2d 402, 404 (1980). Without injunctive relief, Fifth Avenue could potentially suffer further harm during the course of the litigation on remand hereinafter; the Property could be sold, not kept in proper condition, or harmed in a myriad of other manners.

Our review reveals that the trial court erred in denying Fifth Avenue's request for preliminary injunctive relief. *See Robins & Weill, Inc.*, 70 N.C. App. at 540, 320 S.E.2d at 696. Accordingly, we reverse the trial court's order and remand for entry of a preliminary injunction enjoining Defendants from taking any action to encumber, impair, change, or otherwise alter the Property. *See QSP, Inc. v. Hair*, 152 N.C. App. 174, 179, 566 S.E.2d 851, 854 (2002) (reversing the trial court's order denying

FIFTH AVE. UNITED METHODIST CHURCH OF WILMINGTON V. THE N.C. CONF.

*Opinion of the Court*

preliminary injunction and remanding "for entry of a preliminary injunction enjoining defendant from further breach . . . ."); *see also TSG Finishing, LLC v. Bollinger*, 238 N.C. App. 586, 602, 767 S.E.2d 870, 882 (2014) (reversed and remanded "with instructions to issue the preliminary injunction.").

## IV.    Conclusion

For the above reasons, we hold that the trial court committed error by dismissing Fifth Avenue's claims for breach of contract, quiet title, judicial modification of trust, fraud, and constructive fraud for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  We also hold that it was error to dismiss Fifth Avenue's claims for declaratory judgment and quiet title for failure to state a claim pursuant to Rule 12(b)(6).  We therefore reverse the trial court's order ruling on these claims and remand for further proceedings consistent with this opinion.  However, the trial court did not commit error by dismissing Fifth Avenue's claim for promissory estoppel.  Finally, we hold that the trial court committed error by denying Fifth Avenue's request for preliminary injunctive relief; accordingly, we reverse and remand this part of the trial court's order.


AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judge GRIFFIN concurs.

Judge ARROWOOD concurs in part and dissents in part by separate opinion.

No. COA23-1013 – *Fifth Avenue United Methodist Church of Wilmington v. The North Carolina Conference, Southeastern Jurisdiction of the United Methodist Church, Inc., et al.*

ARROWOOD, Judge, concurring in part and dissenting in part.

I concur in the majority's determination and analysis that the claim for promissory estoppel was properly dismissed and in reversing the trial court's dismissal of Fifth Avenue's claim for breach of contract. I believe the trial court is permitted to assess whether Fifth Avenue is contractually entitled to disaffiliate following closure, as this can be decided under neutral principles of law. However, I respectfully dissent from the remainder of the majority opinion. I believe the First Amendment church doctrine warrants dismissal of Fifth Avenue's claims apart from the breach of contract claim and would affirm the trial court's judgment in those respects.

As the majority correctly notes, "the principle that civil courts lack subject matter jurisdiction to resolve disputes involving purely ecclesiastical questions and controversies has long been recognized by this Court," and is based in the intention of the First Amendment to foster "a spirit of freedom for religious organizations, an independence from secular control or manipulation–in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Nation Ford Baptist Church Inc. v. Davis*, 382 N.C. 115, 121–22 (2022) (cleaned up). However, religious organizations do not have absolute immunity from civil liability, and "[w]hen the State has a legitimate interest in

resolving a secular dispute, 'civil court is a proper forum for that resolution.' " *Id.* at 122 (citations omitted).

"Consistent with these First Amendment principles, the impermissible entanglement doctrine precludes judicial involvement only in circumstances involving disputes that implicate controversies over church doctrine and practice," including matters concerning religious doctrines or creeds, the church's form of worship, the adoption of regulations concerning church membership, the power of authorized church officials to exclude individuals from membership or association, or "when a court resolves an underlying legal claim or when it issues a form of relief." *Id.* at 122–23 (cleaned up). Ultimately, the "dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine[,]" and where claims "can be resolved *solely* by applying neutral principles of law, there is no impermissible entanglement." *Id.* at 123 (citations omitted) (emphasis added). "[C]ivil courts cannot decide disputes involving religious organizations where the religious organizations would be deprived of interpreting and determining their own laws and doctrine." *Smith v. Privette*, 128 N.C. App. 490, 494 (1998).

Plaintiff contends the trial court was able to conduct a neutral determination of whether defendants breached the Book of Discipline ("BOD"), and whether provisions of the purported trust are subject to modification based on defendants'

breach of the BOD.  In my view, however, the decision to close the church is a matter of church doctrine and cannot be resolved solely by applying neutral principles of law. The BOD establishes the organization and structure of the UMC and includes the trust clause requiring a denominational trust be included in deeds to church property. The BOD also provides that upon a declaration of exigent circumstances, title to local church property vests with the annual conference board of trustees, and the formal closure of the church is considered at a meeting of the annual conference board, which votes to approve or disapprove the closure.

This necessarily implicates a controversy over church doctrine and practice; the decision to close the church and the surrounding procedure is governed by the BOD, and in my view reversing the trial court's dismissal of these claims would deprive defendant "of interpreting and determining their own laws and doctrine." *Smith*, 128 N.C. App. at 494.  Accordingly, I would affirm the trial court's dismissal of the entangled claims and respectfully concur in part and dissent in part.